David M. STOCK and Janet B. Stock,
Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 76–3846
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 27, 1977.

Thomas A. Travis, Jr., Atlanta, Ga., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Gilbert T. Andrews, Acting Chief, App. Section, U. S. Dept. of Justice, Washington, D. C., Meade Whitaker, Chief Counsel, I. R. S., Washington, D. C., Myron C. Baum, Acting Asst. Atty. Gen., Richard Farber, Mary L. Jennings, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

GOLDBERG, Circuit Judge:

If it is true that an unhappy marriage is a zero-sum game, it is no less true that the financial arrangements incident to the marriage's dissolution perpetuate that game. And when a marriage made in heaven plummets to earth, the postlapsarian ceremonies are presided over by that most fallen of angels, the Commissioner of Internal Revenue. In this case we must decide whether payments made by David Stock to his former wife, Shara, were periodic alimony payments for purposes of § 71, Internal Revenue Code of 1954. If so, the payments were includible in Shara's gross income under § 71(a)(1) of the Code and deductible from David's income under § 215. If not, the payments were not includible in Shara's gross income and David's § 215 deduction must be disallowed. In short, we may fairly say that the question presented here is whether certain payments made by David were deductible in connection with the marital liquidation of David and one Shara Stock.

The Tax Court held that the payments made by David to Shara were not "periodic" within the meaning of § 71, and consequently were neither taxable to her nor deductible by him. David filed this appeal. We affirm.

I.

In July 1969 David (taxpayer) initiated a divorce proceeding against Shara in Georgia court. Shara promptly counterclaimed against David. In October 1969 she filed a notice for record of lis pendens in state court. The property described in that notice included a parcel jointly held by taxpayer and Joseph Ginsburg.

Taxpayer and Ginsburg received an offer to buy this property sometime in 1969. In order to permit the sale, taxpayer entered an agreement with Shara on November 29, 1969, in which she agreed to release her claim of lis pendens. In exchange, taxpayer agreed to execute an escrow agreement providing that a local bank was to hold taxpayer's portion of the proceeds from the sale pending a final determination in the divorce proceedings. The Stock-Ginsburg property was subsequently sold. The contract of sale called for installment payments over a period of five years. Pursuant to its agreement with taxpayer, the local bank held taxpayer's portion of these sums in escrow.

On April 16, 1970, David and Shara, each seconded by a member of the legal profession, tripped out their penultimate *pas de deux*. They executed a settlement agreement purporting to represent a final disposition of all legal rights between them resulting from their marriage, including respective property rights. Paragraph Nine of that agreement provided that David would pay Shara "as further alimony" one-half of the gross proceeds from the sale of his one-half interest in the Stock-Ginsburg property less an outstanding indebtedness of $10,794.[1] The amount and the date of each payment was specified in the agreement. The dates coincided precisely with the dates on which taxpayer was to receive

1. The material provisions of the settlement agreement were:

    5—As partial alimony, David M. Stock, shall simultaneously with the execution of this agreement, convey his interest in and to all jointly held stocks, bonds and securities of any type whatsoever to Shara L. Stock.

    \*   \*   \*   \*   \*   \*

    9—As further alimony, David M. Stock agrees to pay Shara L. Stock one-half of all proceeds as he has received and is entitled to

receive from the sale of his one-half undivided interest in the tract of land which he owned jointly with Joseph H. Ginsburg, less the note payment to the Bank of Dalton in the amount of $10,794.86. Said conveyance being the subject matter of the escrow agreement made and entered into between the parties hereto as well as the Bank of Dalton, Dalton, Georgia, as escrow agent, on November 29, 1969, and being a part of the record in this case. It is stipulated that contemporaneously with the execution of this instrument

installment payments from the sale of the Stock-Ginsburg property; the amounts were precisely one-half of each payment taxpayer would receive. The total David was to pay Shara was stated to be $25,519.07.

Pursuant to Paragraph Nine of the settlement agreement, David paid Shara $6,739.57 in 1970 from proceeds of the Stock-Ginsburg property. In 1971, David paid her $5,062.30 from the proceeds and $970.85 in interest. On his income tax returns for these years, David deducted the full amount of the payments as alimony under § 215 of the Code. The Commissioner denied the deductions on the ground that the payments were nondeductible installment payments. The Tax Court upheld the Commissioner's determination that the installment payments were not "periodic" and consequently were not deductible.

> that David M. Stock shall pay to Shara L. Stock one-half of the remainder of the downpayment on said property, less the Bank of Dalton note, said one-half interest being one-half of $2,864.63, or $1,432.32. It is further stipulated that on the first of December in the years 1970, 1971, 1972, 1973 and 1974, David M. Stock shall pay to Shara L. Stock as further alimony the following sums and amounts, to-wit:
> December 1, 1970, ½ of $10,613.50, or $5,307.25
> December 1, 1971, ½ of $10,124.60, or $5,062.30
> December 1, 1972, ½ of $9,634.70, or $4,817.35
> December 1, 1973, ½ of $9,144.80, or $4,572.40
> December 1, 1974, ½ of $8,654.90, or $4,327.45
>
> It being stipulated that over the period and at the times specified David M. Stock shall pay to Shara L. Stock the total sum of $25,519.07. Further, as security for the said payments, David M. Stock does herewith transfer an one-half undivided interest in these promissory notes and security deed which he holds jointly with the said Joseph H. Ginsberg.
>
> \* \* \* \* \* \*
>
> 11—David M. Stock shall pay alimony at the rate of One Hundred ($100.00) Dollars per month commencing on the first day of May, 1970 and continuing monthly thereafter to Shara L. Stock for a period of five (5) years or until her remarriage, whichever occurs first, however, David M. Stock may terminate said alimony payments if he pays the

## II.

Section 215 of the Code allows a deduction for payments made by a taxpayer to a former spouse if those payments are includible under § 71 in the income of the recipient. Section 71(a)(1) provides that payments are includible in the income of the recipient only if they are (1) periodic and (2) made pursuant to a legal obligation which, because of the marital or family relationship, is imposed by written instrument or decree incident to divorce or separation.[2]

Section 71(c)(1) provides that as a general rule installment payments discharging an obligation of which the principal amount is specified in the divorce decree or separation agreement are not to be treated as "periodic payments" for purposes of § 71(a)(1).[3] One exception to that general rule is described in Treas.Reg. § 1.71–1(d)(3), 26 C.F.R. 1.71–1(d)(3) (1976). That regulation

> full principal and interest amount owing to the Dalton Federal Savings and Loan Association on the property of the parties on Hardwick Circle in The City of Dalton, Georgia. Said alimony shall be deductible to David M. Stock for federal and state tax purposes and shall be included as income to Shara L. Stock for federal and state income tax purposes for such period of time as said alimony is paid.

2. Section 71(a)(1) provides:

> *Decree of divorce or separate maintenance.*—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

3. Section 71(c)(1) provides:

> *General rule.*—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.
>
> Section 71(c)(2) provides one exception to that general rule when the payments are to be made over a period of more than ten years:

provides that where installment payments discharge a principal sum payable over less than ten years, such payments are considered to be "periodic" if (1) the payments are contingent on the death of either spouse, the remarriage of the recipient, or a change in the economic status of either spouse, and (2) if the payments are in the nature of alimony.[4]

Hence, our initial question is whether the conditions of Treas.Reg. § 1.71–1(d)(3) are satisfied, thereby establishing the "periodicity" prerequisite of § 71(a)(1) and removing the case from the general installment payment rule of § 71(c)(1). If the periodicity element of § 71(a)(1) were established, we should then be compelled to decide whether the second element of § 71(a)(1) were present. That is, we should have to decide whether the payments were made because of a legal obligation stemming from a marital or family relationship or, alternatively, whether the payments were merely part of an overall property settlement agreement. If the former were true, then we would conclude that the payments in question were includible within Shara's gross income under § 71 and hence deductible from David's gross income under § 215.

We begin with the first condition of Treas.Reg. § 1.71–1(d)(3)—that is, the matter of the contingency of payment. In deciding whether this condition is satisfied, we shall consider first the intent of the parties in signing the separation agreement providing for such payments, and second whether Georgia law supplies the contingencies necessary to transform the presumptively nondeductible installment payments into deductible periodic payments.

It appears obvious at first blush that the parties did not intend the payments to be conditional. *See generally Knowles v. United States*, 182 F.Supp. 150 (S.D.Miss., 1960), *aff'd per curiam*, 290 F.2d 584 (5th Cir. 1961). Under Paragraph Nine David's obligation to make the payments was absolute; he immediately undertook to transfer to Shara as security a one-half undivided interest in the promissory notes and security deed received on the sale of the property. Paragraph Nine does not condition this security interest or the underlying obligation on the purchaser's performance or any other contingency.

Taxpayer contends, however, that the provision of Paragraph Eleven for the cessation of monthly payments required under that paragraph in the event of Shara's remarriage was also applicable to Paragraph Nine. The Tax Court rejected this argument. Not only is there nothing in the

---

*Where period for payment is more than 10 years.*—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.
Section 71(c)(2) is inapplicable to the case at bar because taxpayer's obligation was payable over five years.

4. Treas.Reg. § 1.71–1(d)(3) provides in pertinent part:
   (i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions:
   (*a*) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and
   (*b*) Such payments are in the nature of alimony or an allowance for support.

agreement that requires these paragraphs to be read together, but whereas Paragraph Eleven specifically provides that the $100 a month payments would be deductible by taxpayer, Paragraph Nine contains no such stipulation regarding the installment payments. Shara naturally testified that she believed the payments under Paragraph Nine, unlike those under Paragraph Eleven, were neither contingent nor includible in her income. The Tax Court correctly concluded that her construction prevails, notwithstanding the "as further alimony" opening clause of Paragraph Nine.[5]

■ Second, taxpayer argues that even if Paragraph Eleven does not supply the requisite contingency to Paragraph Nine payments, Georgia law does. Taxpayer cites Ga.Code Ann. §§ 30–201, 30–209 and 30–220, as making any such payments contingent on, respectively, the death or remarriage of the wife or a change in economic status of the husband.[6] Assuming that

these statutes would impose such contingencies on an award of permanent alimony, they do not impose contingencies on installment payments of a fixed or lump sum such as the $25,519.07 obligation evidenced by Paragraph Nine, even where that paragraph terms the payments "alimony." *See Morris v. Padgett*, 233 Ga. 750, 213 S.E.2d 647 (1975); *Herbert v. Huggins*, 231 Ga. 489, 202 S.E.2d 443 (1973); *Eastland v. Candler*, 226 Ga. 588, 176 S.E.2d 89 (1970).

■ The settlement agreement at issue here flatly states that taxpayer is to pay Shara the sum of $25,519.07. It does not, as taxpayer further argues, condition that payment on receipt of the proceeds from the sale of the Stock-Ginsburg property. Hence the $25,519.07 obligation is a lump sum settlement, precluding taxpayer under Georgia law from importing the "contingencies" of §§ 30–201, 30–209, and 30–220.

■ Because taxpayer has failed to demonstrate that the "contingency" element of

---

**5.** The "as further alimony" language was also used to open Paragraph Five, which referred to taxpayer's conveyance to Shara of his interest in jointly held securities. Paragraph Five thus looks even more like a mere property settlement than Paragraph Nine, despite the precatory "alimony" language. *See* note 1, *supra.*

**6.** Ga.Code Ann. § 30–201 provides:

*Definition. Permanent and temporary.*— Alimony is an allowance out of the husband's estate, made for the support of the wife when living separate from him. It is either temporary or permanent.

Ga.Code Ann. § 30–209 provides:

*Jury may provide permanent alimony; factors in determining amount; effect of remarriage by wife.*—The jury rendering the final verdict in a divorce suit may provide permanent alimony for the wife, either from the corpus of the estate or otherwise, according to the condition of the husband. In all cases where alimony is awarded to the wife, her separate estate and earning capacity, as well as any fixed liabilities of the husband for the support of minor children, shall be taken into consideration in fixing the amount. All obligations for permanent alimony to the wife, whether created by contract, verdict, judgment, or decree, the time for performance of which has not yet arrived, shall cease upon her remarriage unless otherwise provided in the decree.

Ga.Code Ann. § 30–220 provides:

*Revision of judgment for permanent alimony; grounds; petition; hearing.*—The judgment of a court providing permanent alimony for the support of a wife or child or children, or both, shall be subject to revision upon petition filed by either the husband or the wife showing a change in the income and financial status of the husband. Such petition shall be filed and returnable under the same rules of procedure applicable to divorce proceedings. Such petition shall be filed in the same county in which the original judgment was granted. No petition may be filed by the wife under this law [§§ 30–220 through 30–225.1] within a period of two years from the date of the filing of a previous petition by the wife under this law. No petition may be filed by the husband under this law within a period of two years from the date of the filing of a previous petition by the husband under this law. After hearing both parties and the evidence, the jury, or the judge where a jury is not demanded, may modify and revise the previous judgment so as to provide for the wife, or child or children, or both, in accordance with the changed income and financial status of the husband, if such a change in the income and financial status of the husband is satisfactorily proved, so as to warrant such modification and revision. In the hearing upon a petition filed as provided herein, testimony may be given and evidence introduced relative to the income and financial status of the wife.

Treas.Reg. § 1.71–1(d)(3) is satisfied by reference to either the intent of the parties or the operation of state law, we need not discuss whether the second element of that Regulation is present. Because this regulatory exception to § 71(c)(1) of the Code thus does not obtain, we are governed by the general rule that installment payments discharging a fixed obligation specified in the divorce decree or separation agreement are not treated as "periodic payments." Therefore the "periodicity" prerequisite of § 71(a)(1) remains unsatisfied here, whatever the force of taxpayer's arguments on other issues. It follows that David's payments to Shara are not includible in her gross income under § 71(a)(1), and therefore not deductible from his gross income under § 215.

The judgment of the Tax Court is AFFIRMED.