Justin H. **KIMBALL,**
Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–Appellee.

**No. 1249, Docket 88–4037.**

United States Court of Appeals,
Second Circuit.

Submitted June 15, 1988.

Decided Aug. 2, 1988.

Richard G. Kent, Richard J. DiMarco, Cohen & Wolf, Bridgeport, Conn., for petitioner-appellant.

William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, Deborah Swann, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before OAKES, MESKILL and
PIERCE, Circuit Judges.

MESKILL, Circuit Judge:

This appeal presents us with questions arising out of the interaction of sections of the Internal Revenue Code (Code) that outline the deductibility of certain alimony payments with state law concepts that define the duration and effect of the terms of a divorce decree. Specifically, we must decide whether, under Connecticut law, alimony payments are presumed to cease upon the death of the payor spouse and are thus, in the absence of any express provisions to the contrary, sufficiently "contingent" to be deductible from the payor spouse's taxable income pursuant to sections 71 and 215 of the Code, 26 U.S.C. §§ 71, 215,[1] and Treas.Reg. § 1.71–1(d), 26 C.F.R. § 1.71–1(d) (1987). The United States Tax Court, Fay, J., held that the payments at issue in this case were not sufficiently contingent and ordered the taxpayer to pay back taxes owed by virtue of improper deductions in previous years. *See Kimball v. Commissioner,* 54 T.C.M. (CCH) 513 (1987). For the following reasons, we now reverse.

BACKGROUND

The facts are not in dispute. In May 1980, taxpayer-appellant Justin H. Kimball

---

1. All provisions of the Code discussed herein are from the Internal Revenue Code of 1954, as it existed at the time of the events in this case and before the passage of the Tax Reform Act of 1986. However, we agree with the tax court that the 1986 amendments to sections 71 and 215 would not affect the interpretation of those provisions at issue in this case. *See Kimball v. Commissioner,* 54 T.C.M. (CCH) 513, 514 n. 3 (1987).

was divorced from his wife, Barbara Kimball, by a consent decree entered in a Connecticut state court. The decree provided that Mr. Kimball would pay Mrs. Kimball alimony in the amount of $18,000 per year for six years and that "there shall be no motion to reduce the alimony based upon [a] material change in circumstances for a period of three (3) years from the date of this judgment." . *See* J.App. 44–45. The decree further provided that either party could seek a modification in the alimony payments on the basis of "a material change in circumstances" during the last three years of the six year payment period. *See id.* at 45.

On the day the divorce decree was agreed upon and entered, the Kimballs appeared in Connecticut Superior Court before Judge Novack. Mrs. Kimball asked the judge to explain the provisions regarding modification of the alimony. Judge Novack said:

> You filed a financial affidavit, and your husband has. That will be the base for the determination by the court at a later time if a motion is brought by you or your husband, as to whether or not there is a material change of circumstances. You'll each be required to file a financial statement at that time if either party makes a motion. And the court at that time will compare to see what the circumstances are, to see if there has been a change.

*Id.* at 54–55. Mrs. Kimball asked further questions and Judge Novack, apparently attempting to provide an example, said:

> Your husband could die and that would be a material change in circumstances, and it could be extinguished. And it would not be an expense of his estate. But he's got insurance for that purpose. And he's agreeing to carry insurance.

*Id.* at 55.

Acting pursuant to the divorce decree, Mr. Kimball thereafter paid his ex-wife

$10,500 in alimony in 1980 and $19,930 in 1981. When he completed his federal income tax returns for those years, he entered deductions in those amounts pursuant to section 215 of the Code. Subsequently, the Commissioner of the Internal Revenue Service (the Commissioner) disallowed the deductions, claiming that the payments made by Mr. Kimball to Mrs. Kimball did not constitute properly deductible alimony under sections 71 and 215 of the Code and regulations promulgated thereunder. The Commissioner increased Mr. Kimball's taxable income accordingly in both tax years—also making resulting adjustments in other deductions—and filed notices of deficiency totaling $15,447.70.

The taxpayer then petitioned the tax court for relief pursuant to 26 U.S.C. § 6213 (1982 & Supp.IV 1986). The tax court, however, upheld the Commissioner's determination, holding that the payments at issue were not properly deductible. In sum, the tax court held that the payments could not constitute deductible alimony because the decree itself precluded any changes in the payments for the first three years. Thus, the court held, the agreement did not contemplate adjustments for such contingencies as death, remarriage or a change in economic circumstances, and the payments therefore could not constitute deductible alimony under the terms of Treas. Reg. § 1.71–1(d). This appeal followed.

## DISCUSSION

Section 215 of the Code allows a payor spouse to deduct alimony payments from taxable income to the extent that such amounts were properly includible as gross income in the same tax year by the payee spouse pursuant to section 71 of the Code.[2] *See Fox v. United States*, 510 F.2d 1330, 1334 (3d Cir.1975) (noting under similar Code provisions that "it is ... axiomatic that the Code defines deductibility to the husband in terms of includibility of the amounts received in the wife's income").

---

**2.** The then-existing version of section 215 provided, *inter alia,* that:

    (a) *General Rule*

    In the case of a husband described in section 71, there shall be allowed as a deduction

amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year.

Section 71 defines the types of alimony and support payments that are includible as gross income by the spouse receiving them.[3] That section distinguishes two different types of payments: periodic payments and installment payments. *See White v. Commissioner of Internal Revenue*, 770 F.2d 685, 689 (7th Cir.1985). Periodic payments made pursuant to a divorce decree to discharge a legal obligation arising out of the marital relationship are includible as gross income, *see* 26 U.S.C. § 71(a)(1), whereas installment payments discharging some portion of a principal sum or obligation specified in the decree are not, *see White*, 770 F.2d at 687–88 (citing 26 U.S.C. § 71(c)(1)); *see also Stock v. Commissioner of Internal Revenue*, 551 F.2d 614, 616–17 (5th Cir.1977).

Certain installment payments, however, may be deemed periodic for purposes of section 71 and thus must be included as gross income by the spouse receiving them. First, installment payments that are intended to continue more than ten years beyond the date of the decree are treated as periodic and are includible as income. *See* 26 U.S.C. § 71(c)(2). *See also White*, 770 F.2d at 687–88. Second, under the terms of Treas.Reg. § 1.71–1(d)(3)(i), installment payments not intended to continue more than ten years may nonetheless be considered periodic if those payments meet the following two conditions:

(a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(b) Such payments are in the nature of alimony or an allowance for support.

*See White*, 770 F.2d at 688; *Crouser v. Commissioner of Internal Revenue*, 668 F.2d 239, 241–42 (6th Cir.1981); *Stock*, 551 F.2d at 616–18.

In this case, the parties to this litigation agree that the payments made by Mr. Kimball to Mrs. Kimball pursuant to the divorce decree satisfy the second of the two conditions imposed by Treas.Reg. § 1.71–1(d)(3)(i), that they be "in the nature of alimony or an allowance for support." *See* 54 T.C.M. (CCH) at 514. Hence, this case is distinguishable from situations where payments are clearly in the nature of property settlements. *See Crouser*, 668 F.2d at 242–43 (payments of outstanding debts on property transferred to wife). However, as to the first condition—the existence of the contingencies themselves—the parties disagree. These contingencies can be expressly created by the divorce decree or they may be "imposed by local law." Treas.Reg. § 1.71–1(d)(3)(ii)(a). *Cf. Crouser*, 668 F.2d at 241–42 (examining state law to determine presence of contingencies); *Stock*, 551 F.2d at 618–19 (same); *Gale v. Commissioner of Internal Revenue*, 191 F.2d 79, 81 (2d Cir.1951) (noting under an earlier version of the Code that state law may create contingencies that render alimony payments periodic). The Commissioner contends that the Kimball decree clearly rendered all payments made within the first three years unmodifiable without exception. Thus, he argues, those payments cannot be considered periodic, but must be seen as installment payments. The tax court agreed. *See* 54 T.C.M. (CCH) at 515. The taxpayer, on the other hand, argues that under Connecticut law, the obligation of one spouse to make alimony or support payments pursuant to a di-

---

**3.** The then-existing version of section 71 provided, *inter alia,* that:

  (a) *General Rule*
  (1) *Decree of divorce or separate maintenance*
    If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family rela-

tionship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

    . . . .
  (c) *Principal Sum Paid in Installments*
  (1) *General rule*
    For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

vorce decree is presumed to expire upon that spouse's death unless there is specific language in the decree to the contrary. Therefore, he argues, the obligation in the Kimball decree is inherently contingent as a matter of state law and must be deemed periodic for purposes of section 71 of the Code and Treas.Reg. § 1.71–1(d). We agree with the taxpayer.

Under Conn.Gen.Stat.Ann. § 46b–86(a) (West 1986), payments made for alimony or support pursuant to a divorce decree are considered inherently modifiable by the court, "[u]nless and to the extent that the decree precludes modification." Thus, it is clear that the parties to a divorce decree have the power to preclude modification through express language. However, Connecticut courts have consistently held that language precluding modification is disfavored and that ambiguous agreements must be treated as modifiable. *See, e.g., Cummock v. Cummock,* 180 Conn. 218, 222–23, 429 A.2d 474, 476 (1980); *Scoville v. Scoville,* 179 Conn. 277, 279, 426 A.2d 271, 273 (1979); *Bronson v. Bronson,* 1 Conn.App. 337, 338–39, 471 A.2d 977, 979 (1984). *See also Lilley v. Lilley,* 6 Conn. App. 253, 255, 504 A.2d 563, 565 (1986). We have no doubt that the Kimball decree precluded modification for three years on the basis of any changes in the economic circumstances of either spouse. The language of the decree itself supports this interpretation, *see* J.App. 44–45, as does the content of Mrs. Kimball's colloquy with Judge Novack, *see id.* at 54–55. However, if the decree embodied an intent that the payments in those initial three years would be modified by Mrs. Kimball's remarriage or Mr. Kimball's death, then the payments would nonetheless be deemed "periodic."

We need not consider whether Mrs. Kimball's remarriage would have terminated the payment obligation because Connecticut case law clearly supports the taxpayer's argument that in the absence of specific language to the contrary, obligations arising from alimony or support agreements "ordinarily terminate[ ] upon the death of either spouse." *Rubin v. Rubin,* 204 Conn. 224, 234, 527 A.2d 1184, 1189 (1987). *See McDonnell v. McDonnell,* 166 Conn. 146, 150–51, 348 A.2d 575, 577 (1974) (holding that a husband's estate was obligated to continue making alimony payments only because the decree "clearly and unequivocally" imposed such an obligation upon the husband and his " 'heirs, executors and representatives' "); *Harrison v. Union & New Haven Trust Co.,* 147 Conn. 435, 439–40, 162 A.2d 182, 183–84 (1960) (holding that the court could order a deceased husband's estate to make alimony payments "[o]nly if the decree, properly construed, *actually ordered* payments of periodic alimony after the decedent's death") (emphasis added). *Cf. McCann v. McCann,* 191 Conn. 447, 452, 464 A.2d 825, 828 (1983) (holding that questions concerning a payor spouse's support obligations become moot upon the death of that spouse). We believe that these cases create a presumption that payments in the nature of alimony or support are "subject to ... the contingenc[y] of [the] death of either spouse," *see* Treas.Reg. § 1.71–1(d)(3)(i)(a), unless the decree itself specifically and unequivocally provides that the payor spouse's estate or other successors shall be liable for such payments. Because the Kimball decree contains no such language, the payments at issue meet the only disputed requirement and must be considered "periodic" under section 71 of the Code. Therefore, they were properly deductible by the taxpayer pursuant to section 215 of the Code.

■ Despite the clear import of the cases cited above, however, the Commissioner argues that payments in the first three years under the Kimball decree were not contingent upon Mr. Kimball's survival. Relying in part on the tax court's opinion below, *see* 54 T.C.M. (CCH) at 514–15, the Commissioner argues that Connecticut cases such as *Harrison* stand for the proposition that the death of the payor spouse is a change in material circumstances like any other. Thus, he argues, the Kimball decree did, in fact, preclude any modification based on such an event. In support of this argument, the Commissioner also relies on Judge Novack's reference to Mr.

Kimball's possible demise as "a material change in circumstances." *See* J.App. 55.

We are not persuaded by the Commissioner's reasoning. The Connecticut Supreme Court clearly held in *Harrison* that alimony and support obligations cease upon the payor spouse's death unless the "[divorce] decree, properly construed, *actually ordered* payments ... after the [payor spouse's] death." 147 Conn. at 439, 162 A.2d at 184 (emphasis added). *See also McDonnell*, 166 Conn. at 150–51, 348 A.2d at 577. Here, there was no such specific command in the language of the Kimballs' divorce decree. Moreover, we do not believe that Judge Novack's comment provides the specific language required by *Harrison* and the other cases cited above. Although Judge Novack referred to Mr. Kimball's possible death as a "material change in circumstances," he also noted that such an event would "extinguish[ ]" Mr. Kimball's obligations and said that in such an event, payments under the decree "would not be an expense of his estate." *See* J. App. 55. Even if the judge's comments could overcome the lack of a clear and specific command in the text of the decree itself—and we do not believe that they do—the comments themselves are susceptible of differing interpretations and are inconclusive. At best, the Kimballs' decree must be viewed as ambiguous on the question of whether or not Mr. Kimball's death would automatically extinguish his obligations under that instrument. As such, the decree must be viewed as modifiable under that circumstance. *See Cummock*, 180 Conn. at 222–23, 429 A.2d at 476; *Bronson*, 1 Conn.App. at 339, 471 A.2d at 979.

## CONCLUSION

The judgment of the tax court is reversed and this case is hereby remanded with instructions to enter judgment for the taxpayer.