ETHEL H. BURKLE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Burkle v. Commissioner
Docket Nos. 10774-81, 11637-82, 12271-82, 16953-82.
United States Tax Court
T.C. Memo 1986-394; 1986 Tax Ct. Memo LEXIS 212; 52 T.C.M. (CCH) 249; T.C.M. (RIA) 86394; August 25, 1986. John E. Drew and John S. Mason, Jr., for the petitioner in docket Nos. 10774-81 and 16953-82. Judith Burkle Reynolds, pro se in docket No. 11637-82. David R. Schaefer and Stephen L. Saltzman for the petitioners in docket No. 12271-82. Robert E. Marum and Powell W. Holly, Jr., for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioner Ethel Burkle's Federal income tax in the amounts of $34,782.08 and $50,381.05 for the years 1977 and 1978 (docket Nos. 10774-81 and 16953-82, respectively). Respondent also determined a deficiency in the Federal income tax of the Estate of Robert N. Burkle, and Margaret M. Burkle, Surviving Spouse in the amount of $35,881.42 for the year 1977 (docket Nos. 11637-82 and 12271-82). The issues for decision are (1) whether certain payments received by petitioner Ethel Burkle from her former husband's estate in 1977 and 1978 constitute alimony payments under section 71; [2] and (2) whether *214 such payments are deductible by the estate under section 215 for the year 1977. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Ethel Burkle (hereinafter referred to as Ethel) resided in North Haven, Connecticut at the time her petitions were filed. Robert N. Burkle, deceased (hereinafter referred to as Robert), was a resident of Connecticut on August 24, 1977, the date of his death and his estate was probated there. The co-administratrices, Margaret M. Burkle, who is also the surviving wife, and Judith Burkle Reynolds, daughter of the deceased, resided in Connecticut when the petitions in Docket Nos. 11637-82 and Docket No. 12271-82 were filed. Ethel timely filed individual income tax returns for the taxable years 1977 and 1978, using the cash basis method of accounting. A timely joint income tax return was filed for Robert, deceased, and Margaret M. Burkle, surviving spouse, for the taxable year *215 1977, using the cash basis method of accounting. Robert and Ethel were married on April 29, 1935. Ethel initiated an action to dissolve the marriage on June 19, 1973. On January 14, 1975, a judgment dissolving the marriage was entered by the State of Connecticut Superior Court. Incorporated within the judgment was an agreement, dated January 2, 1975 executed by Robert and Ethel and negotiated by their separate counsel. The pertinent provisions of the agreement provide as follows: Whereas, on the 19th day of June, 1973, the Wife commenced an action for divorce or dissolution of said marriage seeking alimony, returnable to the Superior Court for New Haven County, and * * * Whereas, the parties desire to settle amicably and to determine as between themselves, and out of Court, the question of the right of the Wife to alimony, and the amount thereof, it is therefore AGREED: * * * 2. The following agreements have been reached with respect to transfers by Husband to Wife as lump sum alimony absolutely and without condition. (a) The Husband shall transfer to Wife his interest in premises located at 82 Hartley Street in North Haven, Connecticut. * * * (b) The Husband shall *216 forthwith pay Ten thousand ($10,000.) dollars in cash to the Wife. (c) The Husband shall forthwith pay the sum of Three thousand, five hundred ($3,500.) dollars on account of attorney fees incurred by Wife. 3. The following agreements have been reached with respect to periodic payments by Husband to Wife from income of Husband which shall continue so long as Husband shall live and subject to termination in the event of death or remarriage of Wife: (a) Effective October 1, 1974, Husband shall pay to Wife fifty (50%) percent of gross salary thereafter earned by him from Autac, Inc. and/or Wire, Inc. up to a salary of Thirty thousand ($30,000.) dollars. * * * (b) Effective October 1, 1974, Husband shall pay to Wife thirty (30%) percent of net income in excess of Thirty thousand ($30,000.) dollars thereafter earned by him from Autac, Inc. and/or Wire, Inc. Net income, for the purpose of this subparagraph, shall mean salary earned by or dividends paid to Husband by Wire, Inc. or Autac, Inc. in excess of Thirty thousand ($30,000.00) dollars less that amount payable to the United States as taxes on all such excess payments, taking into consideration, however, the deduction Husband *217 will have for alimony payments and all other proper deductions. * * * 4. The following agreement has been reached with respect to control of corporations owned by Husband, Wire, Inc. and Autac, Inc. and with respect to undistributed earnings of either corporation. (a) Husband shall have full control of both corporations and his decisions as to the necessity for accumulation of corporate funds or what he determines to be good business practice shall be final. * * * In the event of a bona fide sale of either corporation or in the event of the death of the Husband, the Wife shall receive further payment, as follows: (i) In the event of a sale and after payment of all corporate liabilities, Husband will receive first a payment equivalent to the net worth of the corporation sold as shown on the year-end statement for the Spring of 1974. From the remaining funds resulting from such sale Wife will receive thirty (30%) percent of the net increase in book value occurring during and after the fiscal year which began in the Spring of 1974. * * * It is the purpose of this paragraph to provide for payment of alimony from earnings retained hereafter on hand at time of sale. (ii) In *218 the event of the death of the Husband the Administrator or Executor of his estate may elect to sell said corporation and in the event of a bona fide sale the provisions of paragraph 4(a)(i) shall apply and Wife shall be deemed to be an interested party in any probate hearing concerning the bona fides of sale. (iii) In the event that Husband should die and his Administrator or Executor should elect not to sell his interest in Autac, Inc. or Wire, Inc., then and in that event, Wife shall be paid based on paragraph 4(a)(1) as if there had been a sale permitting full payment of the thirty (30%) percent net increase in book value, said payment to be made within twelve (12) months of the appointment of the Executor or Administrator. * * * (c) It is specifically understood and agreed that in the event of the death of the Wife or the remarriage of the Wife prior to the sale of the business or prior to the death of Husband, then the provisions of this Agreement with respect to payment of thirty (30%) percent of net equity in the event of sale of corporation or its stock or death of Husband shall expire and terminate. Paragraph five of the agreement contains provisions for determining *219 alternate alimony payments in the event that Robert was no longer employed or in control of the two corporations, Autac, Inc. and Wire, Inc. Paragraph six provides that Robert would pay to Ethel as alimony 15 percent of that portion of rent, received by Robert from the two corporations, which he used for his personal benefit. This obligation ceased in the event of either party's death or Ethel's remarriage. Paragraph seven provides as follows: Husband shall deliver a note in the amount of Fifty Thousand ($50,000.00) Dollars and said note shall be secured by a mortgage on the business real estate located in North BranfordConnecticut. No interest shall be paid on said note and said note shall expire and terminate in the event of the remarriage of Wife or death of Wife before Husband. Said note shall be payable in the event of sale of such real estate or in the event of the death of Husband. The said note shall bear the description of the terminable interest. The promissory note itself stated that it would expire in the event of Ethel's remarriage but, contrary to the agreement, did not contain the proviso with respect to the wife's death before the husband. Paragraph 12 *220 of the agreement states that in consideration of the undertaking of the husband under the agreement, the wife would relinquish all claims against the husband for "other forms of alimony, support and maintenance." Prior to the entry of judgment of the divorce, Robert owned all the outstanding stock of Autac, Inc. and Wire, Inc., two Subchapter S Corporations. In the financial affidavit, dated September 13, 1974, filed by Ethel in the divorce action, she did not list as an asset any interest in Autac, Inc. or Wire, Inc.
Ethel received monthly payments from Robert from January 1, 1977, through August 1, 1977, totalling $14,940. Robert died on August 24, 1977. By letter dated October 5, 1977, Ethel's attorney presented a claim to the estate on behalf of Ethel in the tentative amount of $175,000 consisting in (a) the $50,000 promissory note by Robert to Ethel referred to in paragraph 7 of the above agreement and (b) $125,000 based on paragraphs three and four of the agreement. The estate issued two checks to Ethel, dated December 21, 1977 and December 27, 1977, in the amounts of $40,000 and $25,000. The letters from the estate transferring the checks and the checks themselves note *221 that they are payment on account of the claim made by Ethel on October 5, 1977 regarding section (b) relative to alimony due. A check, dated October 31, 1978, in the amount of $96,000 was paid by the estate to Ethel, representing payment in full of Ethel's claim. The amount of $96,000 was arrived at as a compromise between the amount presented by Ethel and the amount computed by the estate. Ethel's attorney had computed the amount due as follows: Ethel's 30% share of salary over
$30,000
and increase in net worth of
corporations
$121,766.94
Rent
5,250.00
Note
50,000.00
$177,016.94
Less Payments made
1975 $3,000
1976 13,000
1977 64,940
80,940.00
$ 96,076.94
The estate computed the amount due as follows: 50% of salary up to $30,000
$ 15,000.00
30% of excess salary over $30,000
20,844.97
Rent
5,250.00
Increase in book value
82,628.37
Alimony due
$123,723.34
Second mortgage Note
50,000.00
Total
$173,723.34
Lees Payments to date
$14,940
$65,000
79,940.00
Balance
$ 93,783.34
Ethel reported on her 1977 tax return the monthly payments of $14,940 as alimony received and these payments are not in dispute. *222 She did not include in income the amounts received in 1977 totalling $65,000 or the $96,000 received in 1978 but noted on her returns for the years 1977 and 1978, that the payments were received as a nontaxable property settlement and a nontaxable distribution, respectively. The 1977 joint income tax return of Margaret Burkle and Robert claimed a deduction for alimony for the $65,000 payment made in 1977. In the notices of deficiency issued to Ethel for the years 1977 and 1978, respondent determined that the payments in question received by Ethel constituted alimony income. Respondent issued a notice of deficiency of income tax for the year 1977 to the Estate of Robert Burkle, Judith Burkle Reynolds and Margaret Burkle, Co-Administratrix (sic) and Margaret Burkle, Surviving Wife, stating that the $65,000 payments were not includable in Ethel's income and denying the alimony deduction under section 215. Separate petitions were filed by Judith Reynolds and Margaret Burkle. OPINION Ethel contends that the amounts she received from the estate do not constitute taxable income under section 71 but rather represent lump-sum payments in recognition of her contributions to her husband's *223 business. Ethel also contends that the amounts paid by the estate in 1977 and 1978 are not deductible under section 215. Therefore, the inclusion in her income as taxable alimony, she argues, would constitute a distortion of income. Petitioners Estate of Robert Burkle and Margaret Burkle, Surviving Wife (hereinafter sometimes referred to as petitioners in the plural) contend that the payments made in 1977 are periodic payments which constitute taxable income to Ethel under section 71 and are deductible by petitioners under section 215. The deductibility of the payment of $96,000 in 1978 is not at issue in these cases. Respondent on initial brief stated that the notices of deficiency took inconsistent positions with respect to the year 1977 and, without abandoning this stakeholder position, argued that the amounts received by Ethel in 1977 and 1978 were includable in income under section 71 and were deductible on the joint return of petitioners with respect to the payments made in 1977 under section 215. However, on reply brief, respondent, while still arguing that the payments are income to Ethel, agrees with Ethel that they are not deductible by petitioners under section 215. *224 The initial issue for decision is whether the payments received by Ethel constitute taxable income under section 71. Section 71(a)(1) as in effect during the years at issue provides: If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. Section 71(c)(1) provides: (1) General Rule. -- For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. The primary issue here is whether the payments made by the estate constitute periodic payments or payments of a principal sum. A principal sum specified in the decree or agreement *225 is one that is readily ascertainable in amount and is not contingent on the happening of certain events. Baker v. Commissioner,205 F.2d 369 (2d Cir. 1953), affg. in part and revg. in part 17 T.C. 1610 (1952); Prewett v. Commissioner,221 F.2d 250 (8th Cir. 1955), revg. 22 T.C. 270 (1954). Section 1.71-1(d) of the Income Tax Regulations provides that payments are not installment payments of a principal sum even though the sum is specified in money or property (and therefore are considered periodic payments) if the payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse and such payments are in the nature of alimony or an allowance for support. The validity of the regulations was upheld by this Court in Kent v. Commissioner,61 T.C. 133 (1973). Initially, we note that, while under Connecticut law the obligation of the husband to support his wife normally ceases upon his death, when a separation agreement provides that the husband's estate will continue to make support payments, the estate is obligated *226 to make the payments. McDonnell v. McDonnell,166 Conn. 146, 348 A.2d 575 (1974). In the instant case, we have different provisions in the agreement imposing different payment obligations, therefore, we will examine each provision separately. Bernstein v. Commissioner,622 F.2d 442 (9th Cir. 1980), affg. a Memorandum Opinion of this Court; Bartsch v. Commissioner,18 T.C. 65 (1952) affd. 203 F.2d 715 (2d Cir. 1953). Paragraphs 3(a) and (b) clearly call for periodic payments based on a percentage of Robert's salary and dividends. Paragraph six regarding rent that Robert would receive from the two corporations does not set forth an ascertainable sum but is based on a percentage of that portion of rent which Robert uses for his personal benefit. Ethel argues that upon Robert's death, the periodic payments called for in paragraphs three and six ceased and Ethel then became entitled to a lump sum payment in accordance with paragraphs four and seven of the agreement. While it is true under the terms of the agreement that the payments under paragraph three and paragraph six terminated on Robert's death, both Ethel in *227 presenting her claim and the estate in its computations included amounts due under these provisions. However, the record is not clear what portion of the payments was allocable to these provisions. In any event, it is clear and we do not understand Ethel to argue otherwise that periodice payments are called for under paragraphs three and six. Because of our determinations below, it is not necessary to decide what amount is allocable to these payments. Paragraph four also does not set forth a definite sum but is based upon a percentage of net increase in value of the two corporations to be determined upon their sale or Robert's death. Clearly no ascertainable principal sum is specified in the agreement. [3] Paragraph four intended to provide for alimony from earnings retained after the date of agreement. This provision was intended to protect Ethel from Robert's decisions to retain earnings in the company rather than pay them out to himself. In the latter case, they would be subject to the percentage alimony provisions in paragraph three. In the former case, without paragraph four, Ethel would never receive her share of the corporate earnings. This adds further weight to the *228 argument that the payments at issue herein were periodic payments. In addition, no amount needed to be paid if Ethel had remarried or predeceased her former husband. The obligation to pay under paragraph seven does specify a sum of money but it is also clearly contingent upon Ethel's surviving her husband and not remarrying. As such, it lacks the "fairly definite character" needed to constitute a principal sum. Baker v. Commissioner,supra.
While it is true, as Ethel argues, that at the time the payments were made, the amounts were ascertainable and subject to no contingencies, the statute is clear that the principal sum must be specified in the agreement. The contingent nature of the payments is indicative of a support obligation rather than a property settlement. McCombs v. Commissioner,397 F.2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court; Beard v. Commissioner,77 T.C. 1275, 1285 (1981). The agreement itself designates the amounts as alimony rather than a property division. While the labels contained in an agreement are *229 not controlling, they are entitled to some probative value where the agreement was subject to negotiations with each party represented by counsel. Schottenstein v. Commissioner,75 T.C. 451, 457 (1980). Ethel claims that the amounts she received were not for support but were made in recognition of the contributions she made to her husband's business citing section 1.71-1(a)(4) of the Income Tax Regulations which states: section 71(a) does not apply to that part of any periodic payment which is attributable to the repayment by the husband of, for example, a bona fide loan previously made to him by the wife, the satisfaction of which is specified in the decree, instrument, or agreement as a part of the general settlement between the husband and wife. * * * Ethel testified that in the early 1960's she transferred some stock worth between $30,000 and $50,000 and in 1966 she transferred money she received from her father's estate, approximately $30,000, to Robert. The transfers were made a considerable number of years before the separation agreement was drawn up. There is no evidence as to how this money was used or if it was used solely for the benefit of her husband's *230 business. The financial affidavit submitted by Ethel during the divorce proceedings shows no ownership interest of Ethel in the business.The amounts to be paid under paragraphs three, four and six were based on Robert's future income rather than based on any past contributions made by Ethel. Finally, the contingent nature of the payments provided for in the agreement, including paragraph seven, belies Ethel's argument. Had she remarried she would receive nothing under any of the relevant provisions of the agreement. Based on the foregoing, we conclude that the payments received by Ethel are taxable under section 71. The next issue for decision is whether petitioners, the estate and Margaret, are entitled to a deduction under section 215 on the joint Form 1040 return. Section 215(a) provides: In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * * [Emphasis added.] Section 1.215-1(b) of the Income Tax Regulations provides as follows: The deduction under section 215 is allowed only to the obligor spouse. *231 It is not allowed to an estate, trust, corporation, or any other person who may pay the alimony obligation of such obligor spouse. * * * Under section 215 and the applicable regulations, only the obligor-spouse is entitled to an alimony deduction. Estate of Jarboe v. Commissioner,39 T.C. 690, 696 (1963). [4]
The fact that a joint return by the estate and Margaret was filed for 1977 does not change the result. Section 6013(a)(2) provides as follows: no joint return shall be made if the husband and wife have different taxable years; except that if such taxable years begin on the same day and end on different days because of the death of either or both, then the joint return may be made with respect to the taxable year of each. * * * While Margaret's taxable year was for the full calendar year of 1977, the taxable year for Robert ended on August 24, 1977, the date of his death. The amounts at issue were not paid during his taxable year, therefore, they are not deductible under section 215. Petitioners cite section 1.6013-3 of the Income Tax Regulations which states that where the husband *232 and wife have different taxable years because of the death of either spouse, the joint return shall be treated as if the taxable years of both ended on the date of the closing of the surviving spouse's taxable year.However, petitioners omitted the rest of the regulation which makes it clear that this statement is for purposes of particular Code provisions, none of which is applicable here. The disallowance of the deduction under section 215 [5] does not mean, however, that Ethel does not include the payments in her income. Periodic payments by the estate are includable in the wife's gross income regardless of the source of payments. Girard Trust Co. v. Commissioner,16 T.C. 1398, 1401 (1951), affd. 194 F.2d 708 (3d Cir. 1952); section 1.71-1(c)(2) of the Income Tax Regulations.
*233 Based on the foregoing, Decisions will be entered for the respondent.
Footnotes
1. The following cases are consolidated herewith: Estate of Robert N. Burkle, Judith Burkle Reynolds, Co-Administratrix, docket No. 11637-82 and Estate of Robert N. Burkle, Deceased, Judith Burkle Reynolds and Margaret M. Burkle, Co-Administratrix and Margaret M. Burkle Surviving Wife, docket No. 12271-82.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue.↩
3. See Swendseen v. Commissioner,T.C. Memo. 1978-501↩.
4. Arnall v. Commissioner,T.C. Memo. 1983-232↩.
5. The estate may be entitled to a distribution deduction for the payments under the income tax rules applicable to estates in Subchapter J and it may also be entitled to a deduction on the estate tax return. Estate of Laughlin v. Commissioner,167 F.2d 828 (9th Cir. 1948) revg. 8 T.C. 33 (1947); Izrastzoff v. Commissioner,15 T.C. 573 (1950), affd. 193 F.2d 625↩ (2d Cir. 1952). However, neither the fiduciary income tax return nor estate tax return are at issue in this case.