RAMONA S. McDONNELL *v.* HELEN M. McDONNELL, EXECUTRIX (ESTATE OF CHARLES W. McDONNELL), ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MacDONALD and BOGDANSKI, Js.

Argued December 5, 1973—decision released March 5, 1974

*David B. Salzman,* for the appellant (plaintiff).

*William R. Murphy,* with whom, on the brief, was *Karen S. Nash,* for the appellees (defendants).

HOUSE, C. J. The plaintiff, Ramona S. McDonnell, a former wife of Charles W. McDonnell, has appealed from the judgment of the Superior Court rendered in her action for a declaratory judgment brought to determine whether the estate of Charles W. McDonnell is obligated to pay her $350 a month in accordance with the provisions of a 1946 divorce decree which terminated their marriage and incorporated within it the provisions of a separation and property settlement agreement into which the parties had entered. The defendant, Helen M. McDonnell, is executrix of the decedent's estate and was his wife for the last twenty-four years of his life.

The relevant facts have been stipulated to by the parties. On October 10, 1946, in the Superior Court in New Haven County, the plaintiff obtained a judgment of divorce from Charles, who died on September 17, 1971. A separation and support agreement dated December 14, 1945, and a stipula-

tion dated October 10, 1946, between Charles and Ramona S. McDonnell were both incorporated into the judgment of divorce,[1] the decree providing that "said Agreement and Stipulation, both being on file, are hereby made a part of this Decree of Divorce, and constitute the terms of this Decree with respect to alimony and support of said minor child."

By the terms of the stipulation, Charles agreed to purchase a single-premium life insurance policy in the amount of $10,000, payable to the plaintiff if she survived him and was unmarried. Charles complied with the terms of this stipulation and upon his death the principal amount was duly paid to the plaintiff.

Paragraphs two and eleven[2] of the 1945 separation and property settlement agreement are those which give rise to the present litigation, it being noted that the daughter referred to in the agreement attained her majority prior to her father's

[1] Such incorporation has been expressly discountenanced by this court. *Foley* v. *Foley*, 149 Conn. 469, 471, 181 A.2d 607; *Lasprogato* v. *Lasprogato*, 127 Conn. 510, 516, 18 A.2d 353.

[2] "2. The Husband further agrees for himself, his heirs, executors and representatives, to pay the Wife Three Hundred Dollars ($300) per month for her maintenance and support and for the maintenance and support of their daughter, so long as the Wife lives in the house in Woodbridge, formerly occupied by said Husband and Wife, and upon the sale of said house, or her quitting occupancy thereof, whichever event shall occur first, to pay her thereafter Three Hundred Fifty Dollars (350) per month for the maintenance and support of herself and daughter, so long as the Wife remains unmarried.

. . . . .

"11. After the daughter, Ramona McDonnell, reaches her majority, the Husband agrees, for himself, his heirs, executors and representatives that he will continue to pay to the Wife the sum of Three Hundred Fifty Dollars ($350) per month for her separate maintenance and support."

death. The remaining paragraphs of the agreement obligated Charles to pay $3000 outright to the plaintiff within five days after the execution of the agreement, to pay for the college education of the daughter and to divide the household furniture and property. It was also agreed that the plaintiff should have custody of the minor daughter subject to reasonable visitation rights by Charles. The sole question presented for our consideration is whether the words "for himself, his heirs, executors and representatives" in paragraphs two and eleven of the agreement and as incorporated by reference in the divorce decree bind the decedent's estate to continue the monthly payments beyond Charles' death. The trial court concluded that they did not and that liability for the periodic payments terminated upon Charles' death. This conclusion has been assigned as error by the plaintiff.

As we have noted, the divorce decree states: "[S]aid Agreement and Stipulation, both being on file, are hereby made a part of this Decree of Divorce, and constitute the terms of this Decree with respect to alimony and support of said minor child." The incorporated agreement between the plaintiff and Charles stated in an introductory paragraph: "WHEREAS it is now considered expedient by said Husband and Wife to enter into an agreement relative to the Wife's support and maintenance, and support and maintenance of their minor child, RAMONA MCDONNELL, and other matters." The defendant focuses upon the language of the agreement, "support and maintenance," and the word "alimony" in the divorce decree, and contends that "[t]he obligation of a husband to 'maintain and support' his wife is imposed by law upon a husband by virtue of the marriage contract. *Cary* v. *Cary,*

112 Conn. 256, 260, 152 Atl. 302 (1930). Such obligation ceases upon the death of the husband. *Borton* v. *Borton,* 230 Ala. 630, 162 So. 529, 101 A.L.R. 320, 322 (1935); *Wilson* v. *Hinman,* 182 N.Y. 408, 75 N.E. 236 (1905)."

On the other hand, the plaintiff emphasizes the contractual nature of the agreement, and, in substance, seeks its specific performance.

Where, as in this case, the provisions of a separation and support agreement have been incorporated by reference in the judgment, it is necessary to ascertain the intent of the parties as expressed in the language of the agreement rather than to construe the language of the decree itself, "as would be proper, and the better procedure had the judgment conformed to our holding in *Lasprogato* v. *Lasprogato,* 127 Conn. 510, 516, 18 A.2d 353." *Foley* v. *Foley,* 149 Conn. 469, 471, 181 A.2d 607. The agreement "must be construed according to the intention of the parties as expressed in the language used in the document itself, rather than according to the intention which may have existed in the mind of either of the parties." *Foley* v. *Foley,* supra; see also *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647, 153 A.2d 828.

Whatever may have been Charles' subjective intent with respect to the language of paragraphs two and eleven of the agreement, he there clearly and expressly obligated himself, his "heirs, executors and representatives" to pay the plaintiff the specified sum monthly so long as she remained unmarried. The provision clearly and unequivocally imposed upon his estate, and upon the defendant as executrix, the obligation to continue posthumously the periodic payments. Aside from a provi-

sion that Charles should pay his wife $3000 within five days, only in these two paragraphs of the agreement was such language used and in no other provisions did Charles bind his estate to fulfill specific obligations thereunder. "It has been held without exception that where a separation agreement provides for the continuation of payments to the wife after the death of the husband, the right of the wife to receive the payments after the husband's death is not affected by an intervening divorce decree which either incorporates the former agreement or substantially provides for such payments in accordance therewith." Note, 147 A.L.R. 708, 709; 2 Nelson, Divorce and Annulment (2d Ed.) § 14.63; Clark, Domestic Relations § 14.9; 24 Am. Jur. 2d, Divorce and Separation, § 642; note, 39 A.L.R.2d 1406, 1414 § 5 [a]; 27A C.J.S. 1070–71, Divorce, § 234; see *International Trust Co.* v. *Liebhardt,* 111 Colo. 208, 139 P.2d 264, 147 A.L.R. 700; *Flicker* v. *Chenitz,* 55 N.J. Super. 273, 150 A.2d 688; cf. *Harrison* v. *Union & New Haven Trust Co.,* 147 Conn. 435, 162 A.2d 182; *Lasprogato* v. *Lasprogato,* 127 Conn. 510, 514–15, 18 A.2d 353; *Welsh* v. *Welsh,* 4 Conn. Sup. 470, 473; note, 63 Harv. L. Rev. 337, 338.

We conclude that the separation and property settlement agreement as incorporated into the divorce decree bound the decedent and his estate to make the specified monthly payments to the plaintiff so long as she lived and remained unmarried, and that the trial court was in error in concluding otherwise.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to issue a declaratory judgment that the estate

of Charles W. McDonnell is obligated to pay the sum of $350 per month to the plaintiff pursuant to the judgment of the court dated October 10, 1946, and so long as she remains unmarried, and render judgment for the plaintiff for an amount equal to $350 per month from September, 1971, to the date of the judgment with costs and interest from that date.

In this opinion the other judges concurred.