## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1998-CA-01658-SCT

*IN THE MATTER OF THE LAST WILL AND TESTAMENT OF J. E. SHEPPARD, SR., DECEASED: MARGARET SHEPPARD*

*v.*

*BOBBY PACE, EXECUTOR OF THE LAST WILL AND TESTAMENT OF J. E. SHEPPARD, SR., DECEASED, AND PATRICIA HALL SHEPPARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/06/1998 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | GENE A. WILKERSON |
| | JAMES A. PEDEN, JR. |
| ATTORNEYS FOR APPELLEES: | ROBERT E. WILLIFORD |
| | MARCIE MARVEL FYKE |
| | PATRICK F. McALLISTER |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 1/13/2000 |
| MOTION FOR REHEARING FILED: | 01/27/2000; denied 3/16/2000 |
| MANDATE ISSUED: | 3/23/2000 |

## BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.

## BANKS, JUSTICE, FOR THE COURT:

¶1. In this probate dispute a divorce settlement provided that the monthly alimony payments terminate upon the death or remarriage of the wife. There was no mention as to the husband's death. The agreement was made binding upon the parties, their administrators, executors and assigns. We conclude that such an agreement only terminates, as stated by its terms, upon the death or remarriage of the wife. Accordingly, we reverse the chancery court and remand to that court for further proceedings.

### I.

¶2. This dispute arises out of provisions of a Property Settlement and Separation Agreement ("Agreement") incorporated into a Final Judgment of Divorce. The parties to the Agreement were the husband, James Edward "Buddy" Sheppard a/k/a J. E. Sheppard, Sr. ("Buddy") and the wife, Appellant Margaret Sheppard ("Margaret"). Buddy is now deceased.

¶3. The relevant parts of the Agreement provided that (1) Buddy would pay alimony in monthly amounts to

Margaret until the death or remarriage of Margaret, and (2) this Agreement "shall be binding upon the parties hereto, their administrators, executors, and assigns" in Paragraphs 4 and 13 of the Agreement, respectively.

¶4. Margaret and Buddy were lawfully married in Atlanta, Georgia, on June 17, 1959. They were married for more than twenty-five (25) years. They had two children, Michael Clay Sheppard and Valerie Michele Sheppard. Margaret and Buddy made their home in Jackson, Mississippi. Buddy became a very successful and wealthy businessman. Margaret stayed home and raised the children. Margaret and Buddy were divorced on November 21, 1984, in Hinds County, Mississippi. The divorce was granted on the grounds of irreconcilable differences. The Agreement was incorporated into the Final Judgment of Divorce. All parties followed the provisions of the Agreement until Buddy's death. Margaret never remarried. Buddy married Appellee Patricia Hall Sheppard ("Patricia") on August 18, 1995. On September 5, 1997, Buddy executed a Last Will and Testament, appointing Appellee Bobby Pace ("Pace") as Executor. Buddy made Patricia his primary beneficiary. Upon Buddy's death, Pace petitioned the Chancery Court of Hinds County to admit Buddy's Last Will and Testament to probate. The Chancery Court entered an Order admitting the will to probate On December 22, 1997.

¶5. On May 15, 1998, Margaret filed a claim in the probate proceedings. She stated that $15,000 plus interest was owed to her per the Agreement at the time of filing, and $3,000 would be owed to her by the estate on the first of each month. So that Buddy's estate would not have to remain open for many years to make the alimony payments, Margaret demanded $412,853.95 as the current value of the future payments based upon her life expectancy of 21.25 years. Margaret argued that the alimony payments were terminated only by her death or remarriage.

¶6. Pace filed a petition to deny the probate and payment of Margaret's claim. Patricia joined in Pace's petition. The parties submitted briefs and presented oral argument on the issue. The chancery court, concluding that the alimony payments best fit under the label "periodic," applied the statutory conditions for cessation of periodic alimony and denied probate of Margaret's claim. Aggrieved, Margaret filed this appeal.

## II.

¶7. This Court has stated that the chancellor's decision will not be reversed unless the decision is manifestly wrong. *In re Estate of McClerkin*, 651 So. 2d 1052, 1055 (Miss. 1995) (citing *In re Estate of Mason*, 616 So. 2d 322, 331 (Miss. 1993)). "The Court will not hesitate to reverse if it finds the chancellor's decision is 'manifestly wrong, or that the court applied an erroneous legal standard . . . '." *McClerkin*, 651 So. 2d at 1055 (quoting *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993)).

¶8. This Court has expressly recognized that a husband and wife may agree that a husband's obligation to make periodic payments to his wife will survive his death and bind his estate. *Smith v. Smith*, 349 So. 2d 529, 531 (Miss. 1977). Further "it is generally recognized that the parties may, by contract, provide for periodic payments during the life of the wife after her husband's death, so as to make such payments a continuing charge on his estate." *In re Estate of Kennington*, 204 So. 2d 444, 449 (Miss. 1967) (citations omitted).

¶9. We recently addressed this issue in *In re Estate of Peacocke*, 694 So. 2d 1252 (Miss. 1997). In *Peacocke,* we held that absent an express provision that alimony shall be paid by the payor's estate after

the death of the payor the obligation cannot be made an obligation of the estate. *Id.* at 1254.

¶10. The relevant portions of the agreement before us here are, Paragraphs 4 and 13 which read as follows:

4.

The husband further agrees to pay to the wife, as a form of permanent alimony and as his contribution toward the support and maintenance of the wife who's unemployed, the sum of $4,000.00 per month for the next five (5) years, beginning December 1, 1984, and automatically reducing to the sum of $3,000.00 per month after sixty (60) months, and continuing at the rate of $3,000.00 per month from and after December 1, 1989 **until the death or remarriage of the wife** or until otherwise reduced by the Court . . .

13.

**This Agreement shall be binding upon the parties hereto, their administrators, executors and assigns.**

(emphasis added).

¶11. The chancery court failed to consider expressly whether the Agreement was sufficient to bind Buddy's estate, but, rather simply held that the Agreement created periodic alimony. The court reasoned that because the provision was subject to modification by the court it was not lump sum alimony and, therefore, could only be periodic alimony. Thus, by our law governing periodic alimony, it followed, in the view of the chancellor, that it was terminated upon the death of Buddy.

¶12. The chancery court, appears then to have relied upon attaching a label to paragraph 4 instead of its substance. This is error. *Bowe v. Bowe*, 557 So. 2d 793, 794 (Miss. 1990). In *Bowe* we repeated the oft heard admonition to "look to the substance of what has been provided, and not the label." *Bowe* at 795.

¶13. Turning to the substance of the provisions of the agreement, we note that it has long been our law that "[w]here only one exception is mentioned in a contract ... exceptions not mentioned cannot be engrafted upon it."[1] *Gilchrist Tractor Co. v. Stribling*, 192 So. 2d 409, 415 (Miss. 1966). *See also Bailey v. Southern Bell Tel. & Tel. Co.*, 206 Miss. 723, 40 So. 2d 606 (1949); *McCoy v. McRae*, 204 Miss. 309, 37 So. 2d 353 (1948); *United States Fidelity & Guar. Co. v. Maryland Cas. Co.,* 191 Miss. 103, 199 So. 278 (1940); *Divelbiss v. Burns*, 161 Miss. 724, 138 So. 346 (1931). In paragraph 4 the periodic alimony was expressly terminable upon the death or remarriage of Margaret. There is no mention of Buddy's death. Following this familiar rule of construction, we cannot assume that this also meant it terminated upon the death of Buddy. We must instead assume the opposite, that is, the failure to mention Buddy's death as an event of termination expressed an intent that it not be such an event.

¶14. Paragraph 13 fulfills the additional requirement in our law that in order that periodic alimony survive the death of the payor spouse an agreement must expressly binds the estate. Buddy's estate was bound by the Agreement. It follows that the alimony provided in Paragraph 4 survives Buddy's death.

**III.**

¶15. Pace and Patricia assert that Paragraph 6 of the agreement shows that the parties contemplated what was to happen upon Buddy's death. Paragraph 6 stated that Buddy would maintain life insurance in the amount of $160,000 insuring his life with Margaret as the primary beneficiary. Pace and Patricia contend that this provision speaks volumes as to the parties' intent. Patricia asserts that there would be no logical reason to provide such life insurance if they intended the alimony to survive Buddy's death. Patricia asserts that surely they contemplated that the permanent alimony would cease upon Buddy's death, and the life insurance would be the cushion for the loss of the alimony payments. We disagree. We adopt the rationale of our sister states Connecticut, Massachusetts, and Pennsylvania.

¶16. In Connecticut, Massachusetts, and Pennsylvania a life insurance policy does not terminate alimony expressly made binding upon the obligor's estate. *McDonnell v. McDonnell*, 348 A.2d 575 (Conn. 1974); *Taylor v. Gowetz*, 158 N.E.2d 677 (Mass. 1959); *In re Estate of Ervin* 243 A.2d 420 (Pa. 1968).

¶17. In *McDonnell*, the Connecticut Supreme Court held the alimony was binding upon the husband's estate even though he was required to keep an life insurance policy. In that agreement, the alimony was made binding with the language "for himself, his heirs, executors, and representatives." *McDonnell* at 577.

¶18. In *Taylor,* the Massachusetts Supreme Judicial Court interpreted an agreement with the language that the alimony had to be paid "if and so long as the wife is living and remains unmarried." *Taylor* at 296. There was no limitation upon the husband's life, and he was required to maintain a life insurance for the benefit of the wife. *Taylor* at 295-96. The estate argued, as Pace does here, that the life insurance policy was intended to take the place alimony payment upon the husband's death. *Taylor* at 300. The Massachusetts Supreme Judicial Court rejected this argument and ruled the estate had to continue to make the monthly alimony payments to the wife. *Taylor* at 300.

¶19. In *In re Estate of Ervin,* the Pennsylvania Supreme Court interpreted an agreement which contained the language that the alimony payment will continue to the wife "until her death or prior remarriage." *In re Estate of Ervin* at 433. The agreement also bound the parties, their heirs, executors, and assigns. *In re Estate of Ervin* at 436. Additionally, the agreement required the husband to maintain a life insurance policy for the wife's benefit. *In re Estate of Ervin* at 436. The Pennsylvania Supreme Court stated, "In our view, there is no reason why the life insurance cannot be in addition to the [alimony] payments." *In re Estate of Ervin,* at 423.

¶20. Here there is no language in the Agreement which ties the insurance policy to the alimony payments. We conclude that the policy should not be deemed to be provided in lieu of the alimony payments because there is no proof of any intent to do so.

## IV.

¶21. For the foregoing reasons, the alimony agreement is binding upon the Buddy's estate. The chancery court's judgment is reversed. This case is remanded for final distribution of Buddy's estate in accordance with this opinion. We decline to order a lump sum payment as requested by Margaret, however. We leave consideration of the manner in which the estate shall fulfill its alimony obligation to the chancellor.

¶22. **REVERSED AND REMANDED.**

## PRATHER, C.J., PITTMAN, P.J., McRAE, SMITH AND COBB, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS AND WALLER, JJ.

### SULLIVAN, PRESIDING JUSTICE, DISSENTING:

¶23. The chancellor's decision to terminate periodic alimony at the death of the paying spouse, Buddy Sheppard, was entirely consistent with the property settlement agreement reached between Sheppard and his wife at the time of their divorce. The decision of the chancellor was also entirely consistent with Mississippi precedent. At issue is whether the estate of Buddy Sheppard should continue making periodic alimony payments to Sheppard's former wife after his death. The relevant portion of the property settlement agreement states:

4.

The husband further agrees to pay the wife, as a form of permanent alimony and as his contribution toward the support and maintenance of the wife who's unemployed, the sum of $4,000.00 per month for the next five (5) years, beginning December 1, 1984, and automatically reducing the sum of $3,000.00 per month after sixty (60) months, and continuing at the rate of $3,000.00 per month from and after December 1, 1989 **until the death or remarriage of the wife or until otherwise reduced by the Court**; provided further, however, that in the event the wife remarries within two (2) years from the date of this Agreement, the husband agrees to pay her the sum of $50,000.00 and if the wife does not marry within two (2) years but does remarry within five (5) years from the date of this Agreement, the lesser sum of $25,000.00, with said payment, in either event to be made in a method, and on a basis to give him maximum income tax advantage. **The wife hereby releases any other alimony rights not specifically provided herein.**

(emphasis added).

¶24. The chancellor held that under this provision the payments would terminate upon the death of the paying spouse. The position of the chancellor is supported by the law of this state. First, it is well settled that periodic alimony payments terminate upon the remarriage of the receiving spouse or upon the death of the paying spouse. *In re Estate of Peacocke*, 694 So.2d 1252, 1254 (Miss. 1997); *East v. East*, 493 So.2d 927, 931 (Miss. 1986). Second, the only possible means by which periodic alimony payments can continue beyond the death of the paying spouse, as the majority points out in its opinion, is if there is *an express provision that alimony shall be paid by the estate of the paying spouse after the death of the paying spouse*, otherwise the alimony payments cannot be made an obligation of the estate. *Peacocke*, at 1254. In the present case it is obvious that no such express provision exists. The only express provision relates to the death or remarriage of the receiving spouse. There is no express provision that alimony payments shall be made from the estate of the paying spouse after the death of the paying spouse. Absent such an express provision, the claims on the estate made by the receiving spouse must fail. Because there was no manifest error or application of an erroneous legal standard, I would affirm the judgment of the chancery court dismissing the probated claim of Margaret Sheppard. For these reasons, I respectfully dissent.

### MILLS AND WALLER, JJ., JOIN THIS OPINION.

1. This law is commonly referred to by the Latin phrase *expressio unius est exclusio alterius*.