# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00030-SCT

*IN THE MATTER OF THE ESTATE OF JEFF A. HODGES, M.D., DECEASED: MARY ELIZABETH HODGES, ADMINISTRATRIX*

*v.*

*DR. JOAN M. HODGES*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2000 |
| TRIAL JUDGE: | HON. GLENN BARLOW |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RAYMOND L. BROWN |
| ATTORNEY FOR APPELLEE: | JOSEPH R. MEADOWS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND RENDERED - 02/14/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/7/2002 |

**BEFORE McRAE, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. On June 24, 1997, the Chancery Court of Harrison County, Mississippi, entered a judgment of divorce on the grounds of irreconcilable differences in the matter of <u>Joan M. Hodges v. Jeff A. Hodges</u>, Civil Action No. C2402 96-1205. The divorce decree incorporated, by reference, the parties' property settlement agreement ("agreement"). The agreement was executed by Dr. D. Jeff A. Hodges ("Jeff") and Dr. Joan M. Hodges ("Joan") on June 24, 1997, and sworn to before a notary public. The agreement provided for alimony and made a provision for the maintenance of a life insurance policy. A dispute arose after Jeff's death regarding the alimony and, primarily, the life insurance provision. Mary Elizabeth Hodges ("Mary"), Jeff's wife at the time of his death, served as administratrix of his estate and filed as petitioner, Cause No. 99-167-GB, <u>In the Matter of Jeff A. Hodges, M.D., deceased</u>, ("Estate"), in the Chancery Court of Jackson County, Mississippi.

¶2. On behalf of the Estate, Mary made claim to part of the life insurance proceeds. A complaint for a temporary restraining order, other injunctive relief, an attachment of property and a judgment was filed by the Estate against Joan, the ex-wife, on August 13, 1999, in the Chancery Court of Jackson County. The chancellor executed an order of attachment and a separate temporary restraining order on August 13, 1999, against Joan.

¶3. On October, 1, 1999, Joan filed a petition seeking to place the disputed life insurance proceeds into an interest-bearing account at Merchants and Marine Bank in Pascagoula, Mississippi, until further order of the

court. In return for placing the life insurance proceeds in an account, Joan sought to release the lien on her Jackson County property. The chancellor on October 22, 1999, ordered that the life insurance proceeds be placed into an interest-bearing account at the Merchants and Marine Bank in Pascagoula under the name of "Joan Hodges and the Estate of Jeff A. Hodges", subject to the jurisdiction and future order of the court and released the lien against Joan's property located in Jackson County.

¶4. Mary was recognized as Jeff's sole heir at law by the Chancery Court of Jackson County on October 18, 1999.

¶5. On September 22, 2000, a hearing was conducted by the chancellor. The chancellor on October 5, 2000, entered the ruling of the court finding in favor of Joan. An order was prepared and entered on October 10, 2000, formalizing the court's ruling entitling Joan to the insurance proceeds being held in escrow. On December 20, 2000, the trial court denied the Estate's Motion to Reconsider.

¶6. Having timely filed its notice of appeal on December 22, 2000, the Estate now appeals the ruling of the Chancery Court of Jackson County to this Court.

## FACTS

¶7. Joan and Jeff were divorced by the Chancery Court of Harrison County, Mississippi, on June 24, 1997, ending a long marriage, which began on June 30, 1973. Contemporaneous with entry of the Judgment of Divorce, Joan and Jeff entered into the agreement which was incorporated into the Judgment of Divorce. Among other things, the agreement addressed the issue of periodic alimony, which Jeff would pay Joan, and also made provision for the maintenance of life insurance policies by both parties.

¶8. The agreement provided that Jeff would pay Joan the sum of $4,000.00 per month in periodic alimony. Provision III provided as follows:

III.

The first payment shall be due on the first day of July, 1997, and a like amount on the first day of each month thereafter until such time as Wife shall die, remarry or further order of this Court.

¶9. The agreement also made provision for the maintenance of life insurance by both parties. With regard to the life insurance, the agreement provided the following:

Husband shall maintain his current policy of life insurance with Wife listed as a name beneficiary thereon for a sum not more than $164,000.00. Provided however, Wife's interest in the life insurance policy shall decrease at the rate of $4,000.00 per month beginning July 1, 1997, and a like amount each month thereafter so long as alimony is paid by Husband.

Wife shall maintain a policy of life insurance in the sum of $125,000.00 with Husband the name beneficiary. At such time as Wife's prorated interest in Husband's $200,000.00 life insurance policy is reduced to the sum of $125,000.00, then Wife's policy shall likewise be reduced at the rate of $4,000.00 per month with the payment of each alimony payment.

¶10. Jeff died intestate on May 18, 1999. At the time of his death, he was a resident of Jackson County, Mississippi. Joan had moved from Mississippi becoming a resident of New Jersey, but she still owned real

property in Jackson County, Mississippi. Before his death, Jeff had timely made alimony payments to Joan, totaling $92,000.00. The $92,000.00 paid to Joan consisted of 23 alimony payments of $4,000.00 each.

¶11. Joan presented herself to AMA Provident Life Insurance Company as the beneficiary of all $200,000.00 of Jeff's life insurance proceeds, and she proceeded to retain the entire amount. Counsel for the Estate made several requests for the Estate's share of the life insurance proceeds under the terms of the agreement. Joan, however, refused to transmit the requested sum of $128,000.00 to the Estate.

¶12. Through attachment proceedings, these funds were subsequently paid into an interest-bearing escrow account waiting a ruling of the trial court. The trial court ruled that Joan was entitled to the entire $200,000.00.

¶13. On October 16, 2000, the Estate moved for rehearing, reconsideration and reversal of the trial court's order dated and filed in October, 2000. The trial court denied the Estate's motion for reconsideration on December 20, 2000. On December 22, 2000, the Estate timely filed its notice of appeal to this Court, and it raises the following issue:

> **I. Did the chancellor err in finding that Joan was entitled to the entire life insurance policy despite the parties' property settlement agreement?**
>
> **A. Does the periodic alimony survive Jeff's death to bind his estate?**
>
> **B. Does the parties' property settlement agreement serve to limit Joan's interest in the life insurance proceeds?**

## DISCUSSION

¶14. This Court has repeatedly stated that it will examine the record and accept the evidence reasonable tending to support the findings made below, along with all reasonable inferences which may be drawn therefrom which favor the trial court's finding of fact. ***In re Estate of Taylor***, 609 So.2d 390, 393 (Miss. 1992). The chancery court is the trier of fact. ***Bryan v. Holzer***, 589 So.2d 648, 659 (Miss. 1991). In ***Hill v. Southeastern Floor Covering Co.***, 596 So.2d 874, 877 (Miss. 1992), this Court stated that the chancellor's findings will be upheld unless those findings are clearly erroneous or an erroneous legal standard was applied. However, "the Court will not hesitate to reverse if it finds the chancellor's decision is 'manifestly wrong, or that the court applied an erroneous legal standard...'." ***In re McClerkin***, 651 So.2d 1052, 1055 (Miss. 1995) (quoting ***Armstrong v. Armstrong***, 618 So.2d 1278, 1280 (Miss. 1993)).

**I.**

¶15. In the case sub judice, the chancellor had the task of determining who should get the balance of Jeff's life insurance proceeds, the Estate or Joan, pursuant to the parties' agreement which was made part of their judgment for divorce. The parties were divorced on June 24, 1997, and the agreement was executed by the parties on the same day. The agreement addressed the matter of alimony, as well as, life insurance proceeds. The chancellor determined that Joan was entitled to receive the full life insurance proceeds, thereby determining that the balance of the life insurance proceeds held in escrow should be relinquished to Joan. In arriving at his decision, the chancellor relied on the ***In re Last Will and Testament of Sheppard***, 757 So.2d 173 (Miss. 2000) and the ***Matter of the Estate of Peacocke***, 694 So.2d 1252 (Miss. 1997) in interpreting the parties' agreement. The chancellor determined that the contract designating Joan as the

beneficiary of the insurance proceeds was a separate contract with the insurance company; and therefore, she was entitled to the full amount of proceeds and was not bound by the terms of the agreement.

¶16. We find that the chancellor, while citing *Sheppard* and *Peacocke*, erred in applying the proper legal standard established by this Court in *Sheppard* and *Peacocke*.

### A. Does the periodic alimony survive Jeff's death to bind his estate?

¶17. In *Peacocke*, this Court examined the general rule in this State that "a claim for future periodic alimony terminates upon the death of the payor or upon the death or remarriage of the payee" and "cannot be made an obligation of the decedent's estate." 694 So.2d at 1253-54. In prior cases, this Court made a distinction between periodic alimony and lump-sum alimony. *McDonald v. McDonald*, 683 So.2d 929 (Miss. 1996); *Hubbard v. Hubbard*, 656 So.2d 124 (Miss. 1995); *see Bowe v. Bowe*, 557 So.2d 793 (Miss. 1990). This Court in *Hubbard*, stated that "unless it is clear from the record what sort of award (alimony) is given, we will construe any ambiguity as being periodic and not lump sum." 656 So.2d at 130; *see Sharplin v. Sharplin*, 465 So.2d 1072, 1073 (Miss. 1985). "Periodic alimony becomes vested only on the date each periodic payment becomes due." *Bowe*, 557 So.2d at 795; *see Rubisoff v. Rubisoff*, 242 Miss. 225, 235, 133 So.2d 534, 537 (1961). By way of contrast, "lump-sum alimony is vested in the obligee when the judgment awarding it becomes final, retroactive to the date the judgment is entered," and therefore, lump-sum alimony is an "obligation of the estate of the obliger" if not paid before death. *Bowe*, 557 So.2d at 795; *see Holleman v. Holleman*, 527 So.2d 90, 92 (Miss. 1988); *East v. East*, 493 So.2d 927, 931 (Miss. 1986); *Maxcy v. Estate of Maxcy*, 485 So.2d 1077, 1078 (Miss. 1986).

¶18. This Court in *McDonald*, 683 So.2d at 931, stated that:

> This Court has consistently held that periodic alimony is subject to modification and ceases upon the wife's remarriage or the husband's death. *Gresham v. Gresham*, 198 Miss. 43, 21 So.2d 414 (1945), *Wray v. Wray*, 394 So.2d 1341 (Miss. 1981). With regard to lump sum alimony, however, this Court has historically held that such alimony constitutes a fixed liability of the husband and his estate and is not subject to modification. *Butler v. Hinson*, 386 So.2d 716 (Miss. 1980).

> The rule of law providing for the modification of a periodic alimony award arises from the nature of alimony itself, which is based upon the inherently changing financial ability of the husband to support his wife in the manner to which she is accustomed. As a result, the [c]hancellors of this state have the authority to modify periodic alimony awards upon a finding of substantial change in circumstances, regardless of any intent expressed by the parties to the contrary. *East v. East*, 493 So.2d 927, 931 (Miss. 1986), (citing *Brabham v. Brabham*, 226 Miss. 165, 84 So.2d 147 (1955)).

> In the case of lump-sum alimony, however, said alimony is not considered to be in the nature of continuing support, but rather a property transfer which is vested in the recipient spouse at the time said alimony is awarded. *Jenkins v. Jenkins*, 278 So.2d 446 (Miss. 1973). As such, considerations of the payor spouse's financial circumstances are irrelevant, given that an order for lump-sum alimony provides the recipient spouse with a vested right to receive said payments. The fact that payments of lump-sum alimony are often paid in installments may give said payments a superficial similarity to payments of periodic alimony, but said fact does not change the vested, non-modifiable nature thereof.

¶19. Under the rationale of ***Peacocke***, the obligor's estate cannot be burdened with the obligation to pay alimony without an express provision that periodic alimony shall not terminate at the obligor's death. 694 So.2d at 1254. This Court has recognized that the parties may contract to have the obligator's periodic payments survive death and, therefore, continue as a binding obligation upon his estate. ***Smith v. Smith***, 349 So.2d 529, 531 (Miss. 1977); ***In re Estate of Kennington***, 204 So.2d 444, 449 (Miss. 1967).

¶20. However, in ***Sheppard***, this Court expanded the rationale of ***Peacocke*** determining that periodic alimony payments did not terminate upon the death of the ex-husband where the agreement did not expressly provide that the alimony payments should terminate at the obligor's death. In ***Sheppard***, the husband agreed to pay monthly alimony to the wife until her death or remarriage and further provided that this agreement shall be binding upon the parties, their administrators, executors and assigns. 757 So.2d at 174-75. The Court in ***Sheppard*** quoted the language contained in paragraphs 4 and 13 of the agreement as follows:

4.

The husband further agrees to pay to the wife, as a form of permanent alimony and as his contribution toward the support and maintenance of the wife who's unemployed, the sum of $4,000.00 per month for the next five (5) years, beginning December 1, 1984, and automatically reducing to the sum of $3,000.00 per month after sixty (60) months, and continuing at the rate of $3,000.00 per month from and after December 1, 1989, until the death or remarriage of the wife or until otherwise reduced by the court...

13.

This [A]greement shall be binding upon the parties hereto, their administrators, executors and assigns.

***Id***. at 175. This Court held that paragraph 13 of the agreement fulfilled the additional requirement that in order for the periodic alimony to survive the death of the payor spouse, the agreement must expressly bind the estate, thereby binding the estate to pay the alimony. ***Id.*** at 176.

¶21. The Court in ***Sheppard*** followed the rationale of Connecticut, Massachusetts and Pennsylvania courts interpreting whether a life insurance policy terminates alimony that had been expressly made binding upon the payor's estate. ***Id***. at 176 (citing ***McDonnell v. McDonnell***, 166 Conn. 146, 348 A.2d 575 (1974)); ***Taylor v. Gowetz***, 339 Mass. 294, 158 N.E.2d 677 (1959); ***In re Estate of Ervin***, 430 Pa. 431, 243 A.2d 420 (1968)). In ***Sheppard***, the Court held that where there is no language that ties the insurance policy to the alimony payments or any proof of intent to do so contained within the agreement, the agreement cannot be deemed to provide the insurance policy in lieu of alimony to fulfill the estate's alimony obligation. ***Id***. at 176-77.

¶22. Here, the case is factually distinguishable from ***Sheppard***. The parties' agreement obviously considered the inevitable fact that death is certain to everyone. A life insurance policy was expressly tied to Jeff's alimony obligation. This fact was absent in ***Sheppard***. In the case sub judice, Jeff agreed in the agreement, paragraph III, to maintain an existing life insurance policy with Joan as the beneficiary to remain in effect for a sum not more than $164,000.00. The distinguishing fact is that in the case at bar the $164,000.00 life insurance proceeds was to be decreased by the rate of $4,000.00 for each $4,000.00 monthly alimony payment made by Jeff. It is apparent that the life insurance policy, which is plainly applicable at

Jeff's death, stood as a guarantee that if he should die Joan would by agreement be entitled to receive the life insurance proceeds, totaling $164,000.00, less any actual alimony payments made before death, to satisfy the alimony obligation. The reasoning of the chancellor that the periodic alimony did not cease at Jeff's death was blatantly erroneous. The chancellor found that the life insurance proceeds were in addition to the alimony payments. The chancellor incorrectly applied the holding of **Sheppard** to the facts at hand quoting, "the failure to mention the (payor's) death as an event of termination expressed an intent that it not be such an event."

¶23. A clear reading of the agreement in question conveys that in the event of Jeff's death, Joan would be entitled to the life insurance proceeds less the alimony payments received. The parties did not intend for the periodic alimony to survive as a continuing obligation on Jeff's estate as determined by the chancellor below. Therefore, we find that the chancellor erred in the first step of the court's analysis.

### B. Do the terms of the parties' property settlement agreement serve to limit Joan's interest in the life insurance proceeds?

¶24. The chancellor determined that Joan was entitled to the entire $200,000.00 life insurance proceeds and ordered that the $128,000.00 being held in escrow be released to Joan. The Estate argues that Joan was entitled to $164,000.00 in life insurance proceeds less the 23 monthly payments of $4,000.00 in alimony, totaling $92,000.00. Therefore, the Estate's position is that Joan is only entitled to receive $72,000.00 of the insurance proceeds in dispute. The chancellor stated that the contract with the life insurance company designating Joan as beneficiary of the funds was a separate contract with the insurance company. We, however, find that while the lower court is correct in its statement, the conclusion is incorrect.

¶25. Divorce alone does not divest one from receiving life insurance proceeds under the former spouse's policy. **Davis v. Davis**, 301 So.2d 154, 156 (Fla. Dist. Ct. App. 1974). The "fundamental consideration is the intention of the parties based upon a reasonable construction of the entire settlement agreement." **Id**. In interpreting the intention of the parties when examining the settlement agreement, this Court, in **Newell v. Hinton**, 556 So.2d 1037, 1042 (Miss. 1990) (citing **Roberts v. Roberts**, 381 So.2d 1333, 1335 (Miss. 1980)), stated:

> Intent of the parties is crucial in contract interpretation. Of course, it must be understood that the words employed in a contract are "by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy."

See **Holloman v. Holloman**, 691 So.2d 897, 899 (Miss. 1996).

¶26. "Property settlement agreements are contractual obligations." **Prine v. Prine**, 723 So.2d 1236, 1238 (Miss. 1998). In **East**, 493 So.2d at 937-32, this Court held that:

> A true and genuine property settlement agreement is not different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.

The provisions contained within a "property settlement agreement executed prior to a dissolution of marriage," purporting to resolve the parties' property rights, are "interpreted by the courts as any other contract."**Davis**, 301 So.2d at 156.

¶27. Property settlement agreements are not only final and binding on the parties while they are alive, but they are also binding in the event of the death of one of the parties. ***Roberts***, 381 So.2d at 1335.

¶28. This Court in ***Roberts***, 381 So.2d at 1335, stated:

> The rules applicable to the construction of written contracts in general are to be applied in construing a postnuptial agreement. Such a contract must be considered as a whole, and from such examination the intent of the parties must be gathered. Such construction should be given the agreement, if possible, as will render all its clauses harmonious, so as to carry into effect the actual purpose and intent of the parties as derived therefrom.

The Court has further held that as a general rule of law, contracts bind not only the parties thereto, but a contract also is binding upon their executors or administrators, even if they are not named in the contract. ***Cox v. Martin***, 75 Miss. 229, 21 So. 611, 612 (1897).

¶29. In the case sub judice, Joan and Jeff entered into the agreement on June 24, 1997, subsequent to the judgment for divorce. Jeff died on May 18, 1999. The parties' agreement specifically addressed the issue of periodic alimony, which Jeff would pay Joan at the rate of $4,000.00 per month beginning July 1, 1997. The agreement also expressly made provision for the maintenance of life insurance by both parties. It further provided specifically the following condition:

III.

> The first payment shall be due on the first day of July, 1997, and a like amount on the first day of each month thereafter until such time as Wife shall die, remarry or further other of this [C]ourt.

¶30. The agreement provided regarding the maintenance of the life insurance policy as follows:

III.

> Husband shall maintain his current policy of life insurance with Wife listed as a named beneficiary thereon for a sum not more than $164,000.00. Provided however, Wife's interest in the life insurance policy shall decrease at the rate $4,000.00 per month beginning July 1, 1997 and a like amount each month thereafter so long as alimony is paid by Husband.

> Wife shall maintain a policy of life insurance in the sum of $125,000.00 with Husband the named beneficiary. At such time as Wife's prorated interest in Husband's $200,000.00 life insurance policy is reduced to the sum of $125,000.00, then Wife's policy shall likewise be reduced at the rate of $4,000.00 per month with the payment of each alimony payment.

Between July 1, 1997, and his death, Jeff paid a total of 23 alimony payments each for $4,000.00, totaling $92,000.00, as required under the parties' agreement.

¶31. In reading the agreement as a whole and considering the intention of the parties, we find that Joan and Jeff clearly contracted for $164,000.00 of the life insurance proceeds to be maintained to guarantee a limited amount of alimony to be paid to Joan in the event of Jeff's death. The amount was to be reduced by each subsequent alimony payment made by Jeff. The instrument undisputably manifested the parties' intention to provide a minimum amount of alimony payments to Joan and established a death provision

which was tied to the alimony obligation. Joan clearly agreed to these terms. The chancellor erred in allowing Joan to received a windfall. To find otherwise circumvents the express language of the agreement. The chancellor was correct in the determination that the insurance policy was a separate contract, but the lower court inadvertently overlooked the fact that Joan, as a party to the agreement, contracted away her claim to receive more than the remaining $72,000.00 owed to her under the terms of the agreement.[1]

## CONCLUSION

¶32. The judgment of the Jackson County Chancery Court is reversed, and a judgment is rendered here for Joan for $72,000.00 plus her pro rata share of the interest generated on the escrow account. The remaining balance of the insurance proceeds and interest held in escrow are awarded to the Estate.

¶33. **REVERSED AND RENDERED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR.**

1. A total of $200,000.00 in life insurance proceeds were paid to Joan. Joan had already received $92,000.00 in alimony prior to Jeff's death leaving $164,000.00 less $92,000.00, totaling $72,000.00.