ISHEE, J., for the Court.
¶ 1. Seeking an increase in Louis D’Avignon’s alimony obligations, Karen D’Avignon filed a complaint for modification of alimony in the Chancery Court of *404 Harrison County. Louis also filed a motion for modification of alimony, requesting that his alimony obligations be reduced or terminated. The chancery court denied Louis’s motion and awarded Karen an upward adjustment in alimony based on the provisions of the property settlement agreement. Aggrieved by the judgment, Louis appeals. Finding no error, we affirm.
FACTS
¶2. Karen and Louis D’Avignon were married on August 2, 1969 in Biloxi, Mississippi. Karen, who received an undergraduate degree in education from Mississippi State University, taught school in West Point, Mississippi, while Louis finished his fourth year of study at Mississippi State University. Louis received an undergraduate degree in accounting in December of 1970, and the following semester, he entered the business and finance masters program. In January of 1971, while Karen was in the education masters program, the parties’ first child was born.
¶ 3. In May of 1971, Karen obtained her graduate degree in special education and began working with Starkville schools. After completing the masters program at Mississippi State University, on February 14, 1972, Louis began active duty with the United States Air Force. Louis’s military career required the family to move on numerous occasions. Over the course of approximately nine years, the family relocated to Virginia, Germany, Maine, Colorado, Mississippi (while Louis was in Korea for an unaccompanied tour), and Florida.
¶ 4. When the parties moved to Virginia, Karen withdrew her two years of retirement from the Mississippi Public Employees Retirement System in order to assist with the expenses of the move. While in Virginia, Karen worked at the Cerebral Palsy Center and earned Virginia retirement credits while employed there. In August of 1973, Louis was transferred to Germany, and the family moved with him. Karen gave birth to their second child while in Germany. In 1976, Louis was transferred to Maine, and Karen withdrew her Virginia retirement to assist with moving expenses. The parties’ third child was born in Maine.
¶ 5. In 1978, Louis received another transfer, and the family moved to Colorado. Louis was next sent to Korea for an unaccompanied tour, which lasted nearly a year and a half. During his Korean tour, Karen and the children moved to Gulfport, Mississippi. Karen began teaching school in Mississippi, at Harrison Central. The parties planned to move to Fort Walton Beach, Florida upon his return. Karen withdrew her retirement upon Louis’s return for a family vacation to Disney World. Soon after their relocation to Florida however, Louis requested a divorce.
¶ 6. In December of 1981, an agreement was reached, and the parties divorced in Harrison County, Mississippi, on the grounds of irreconcilable differences. Pursuant to the terms of the child custody, child support, and property settlement agreement, Karen retained primary custody of the couple’s three minor children, and Louis agreed to pay child support in the amount of $200 per child, per month. Louis’s alimony obligations amounted to $500 per month for a ten-month period, which began in November of 1981. The agreement further provided that, beginning on September 15, 1982, Louis’s alimony payments would be reduced to $200 per month. An escalation clause was also included in the agreement. It provided for annual adjustments of the child support and alimony obligations “commensurate with any percentage increase in the net earnings (gross earnings minus federal tax, state tax and social security) of the *405 Husband.” The escalations in payments were to begin in January of 1983. Louis earned $2,167.98 per month at the time of the divorce.
¶ 7. In 1996, Louis retired from the Air Force with the rank of lieutenant colonel. He then began working overseas in Saudi Arabia. In 1998, Louis returned to the United States and lived in New Mexico. He planned to return to Saudi Arabia in May of 2000. On March 9, 2000, Karen filed a complaint for modification of alimony. A temporary order was entered, which increased Karen’s monthly alimony from $260 per month to $550 per month, and Louis returned to Saudi Arabia.
¶ 8. Louis resigned from his position in Saudi Arabia in the spring of 2003. Upon returning to the United States, he filed a motion seeking review and modification of alimony. Louis sought to have Karen’s alimony reduced and/or terminated due to a substantial material change in circumstances. Louis asserted that his recent unemployment combined with Karen’s income of approximately $75,000 per year constituted a material change. He further asserted that his sole source of income was his military retirement pay of $3,197' per month.
¶ 9. Karen requested an increase in alimony, asserting that she should be compensated for her years as a military wife and for her withdrawal of retirement funds to assist with the family’s moves. She further contended that the ending of Louis’s child support obligations and her need to replenish her retirement fund constituted a material change in circumstances sufficient to justify a modification. Moreover, although it was not included in her pleadings, Karen asserted during the hearing that she was entitled to a portion of Louis’s military retirement, pursuant to the Uniformed Services Former Spouses Protection Act.
¶ 10. The chancery court entered an order denying Louis’s request for modification of alimony on June 7, 2004. The court also denied Karen’s request to receive a portion of Louis’s military retirement on the grounds that her request was untimely, as it was filed eighteen years after the divorce. The court then looked to the plain language of the property settlement agreement, although neither party raised the issue, and found that it did not provide that the alimony to be paid by Louis was limited to a percentage of his net military earnings. The court noted that the property settlement agreement “only [specified] that the alimony and child support to be paid out of his military income [was] to be accomplished through the Air Force accounting office.” From this reading of the property settlement agreement, the court determined that Karen was entitled to a percentage of Louis’s total net earnings regardless of the source of the income. Because the annual increases in alimony paid by Louis were based solely upon his military pay, the court ordered Louis to provide Karen with an accounting showing his gross earnings from all sources from the date of his retirement. Based on Louis’s gross earnings from all sources of income, the parties were to determine the proper amount of alimony payable to Karen, pursuant to the percentages provided in the property settlement agreement.
¶ 11. Seeking correction of a scrivener’s error, Karen filed a motion for alternation, amendment, or correction of the chancery court’s judgment on June 18, 2004. Louis filed a motion for clarification on August 27, 2004. He requested that the chancery court explain why Karen was entitled to a percentage of his total net earnings from the date of his retirement, when that date was three years prior to the date that Karen filed her request for modification.
*406 ¶ 12. The chancery court entered a judgment on October 8, 2004, correcting the scrivener’s error and clarifying the June 7, 2004 order. The court stated that, although “a pure modification would be effective at best from the date of filing of the Petition,” a property settlement agreement is a matter of contract. Consequently, the court reasoned that the increase in alimony was effective and due at the time specified in the escalation clause of the property settlement agreement. The court then reiterated that Karen was entitled to go back three years prior to the date of filing, as the statute of limitations for contractual matters is three years.
¶ 13. Aggrieved by the court’s decision, Louis asserts the following issues for this Court’s review: (1) the chancellor erred in not setting aside the May 2000 temporary order and not reducing alimony payments back to $260 per month or terminating them altogether, as the evidence showed there had been no substantial change in circumstances justifying the increase; (2) the chancellor abused his discretion in fashioning an award for Karen based on an escalation clause in the property settlement agreement which was not pled or argued by Louis at trial; (3) where Karen filed a motion for modification as opposed to a motion for contempt, the chancellor erred in going behind the date of filing in awarding relief; (4) the chancellor erred in ruling that the escalation clause was not limited solely to Louis’s military pay, but rather applied to all sources of his income, as this clearly was not the intent of the parties.
STANDARD OF REVIEW
¶ 14. Our review of domestic relations matters is limited. Carrow v. Carrow, 741 So.2d 200, 202(¶ 9) (Miss.1999). The chancellor’s findings of fact will not be disturbed on appeal if they are supported by substantial credible evidence. Pacheco v. Pacheco, 770 So.2d 1007, 1009(¶8) (Miss.Ct.App.2000) (citing Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss.1986)). We will not reverse the decision of a chancery court unless the chancellor abused his or her discretion, was manifestly in error, or applied an erroneous legal standard. Carrow, 741 So.2d at 202(¶ 9) (citing Turpin v. Turpin, 699 So.2d 560, 564(1115) (Miss.1997)).
ISSUES AND ANALYSIS
I. The chancellor erred in not setting aside the May 2000 temporary order and not reducing alimony payments back to $260 per month or terminating them altogether, as the evidence showed there had been no substantial change in circumstances justifying the increase.
¶ 15. Alimony may be modified upon a showing that there has been a material and unanticipated change in circumstances. Elliott v. Rogers, 775 So.2d 1285, 1287(118) (Miss.Ct.App.2000) (citing Anderson v. Anderson, 692 So.2d 65, 70 (Miss.1997)). The material change “must occur as a result of after-arising circumstances of the parties not reasonably anticipated at the time of the agreement.” Grice v. Grice, 726 So.2d 1242, 1251(¶ 30) (Miss.Ct.App.1998) (quoting Varner v. Varner, 666 So.2d 493, 497 (Miss.1995)).
¶ 16. Louis asserts that the following constitutes a material change in circumstances: (1) Karen currently earns more than $75,000 per year; (2) at the time of the divorce, she earned from $20,000 to $30,000 teaching school in Florida; (3) Karen’s estate is far superior to his. Louis further asserts the facts that, subsequent to the entry of the temporary order, he quit his job in Saudi Arabia, where he earned $53,000 per year tax free. Based *407 on these facts, Louis argues that the chancellor erred in not reducing or terminating his alimony obligations.
¶ 17. In support of his argument, Louis cites Beacham, v. Beacham, 383 So.2d 146 (Miss.1980), contending that it is factually similar to the case at bar. He quotes the following language from Beacham: “[alimony is not a bounty, to which Mrs. Beac-ham became entitled to receive indefinitely simply by reason of the fact that at one time she had been married to Mr. Beac-ham .... It cannot be said that she is in any way dependant for a livelihood upon receiving alimony from Mr. Beacham.” Id. at 148. Louis excludes the following sentence from his quotation: “[i]n the divorce decree, it was judicially established that the marriage had been broken up and terminated because of [Mrs. Beacham’s] own misconduct.” Id. Consequently, Louis fails to address the emphasis the court placed on Mrs. Beacham’s misconduct -in finding that termination of alimony was warranted.
¶ 18. In finding that Mr. Beacham’s alimony obligation should be terminated, the Beacham court stressed “that alimony will not be allowed to the wife unless the decree for divorce is in her favor.” Id. at 147 (citing Coffee v. Coffee, 145 Miss. 872, 872, 111 So. 377, 378 (1927)). ''The court noted that an exception to this rule is where the wrongdoing wife is destitute and in poor health. Id. (citing Gatlin v. Gatlin, 248 Miss. 868, 871, 161 So.2d 782, 783 (1964) (overruled on other grounds)). Furthermore, the court determined that Mrs. Beacham did not meet this exception, as she was in “the prime of life, enjoying good health, earning a very substantial salary and with every reasonable prospect for a secure future in the form of retirement pay and social security.” Id. at 148. Thus, Beacham is clearly distinguishable from the case at bar. Karen was not a “wrongdoing wife,” and the parties divorced on the grounds of irreconcilable differences.
¶ 19. Regarding Louis’s voluntary reduction in income, i.e., his decision to leave his job in Saudi Arabia, he testified during trial that he had been offered a job (which he subsequently accepted) in San Antonio, Texas, with a salary of $60,000. As for Karen’s increased salary, the court in Spradling v. Spradling, 362 So.2d 620, 624 (Miss.1978), held that the law of alimony does not contemplate penalizing an alimony recipient “for being industrious and endeavoring to accomplish something rather than depend on [the alimony payor] regardless of future circumstances.” Accordingly, we find substantial evidence to support the chancellor’s finding that neither party demonstrated an unanticipated material change in circumstances warranting a modification. This issue is without merit.
II. The chancellor abused his discretion in fashioning an award for Karen based on an escalation clause in the property settlement agreement which was not pled or argued by Louis at trial.
¶20. Louis argues that because the escalation clause in the alimony provision of the property settlement agreement was neither pled in Karen’s complaint, nor addressed during the trial, the chancellor erred in sua sponte converting Karen’s modification action into a contempt action. He further asserts that the chancellor’s actions deprived him of due process, as he was never afforded an opportunity to prepare or to put on a defense to that theory of relief.
¶ 21. It is well established that “[u]nder the general prayer, any relief will be granted which the original bill justifies and which is established by the main facts of the case, so long as the relief granted “will *408 not cause surprise or prejudice to the defendant.’ ” Crowe v. Crowe, 641 So.2d 1100, 1104 (Miss.1994) (quoting Smith v. Smith, 607 So.2d 122, 127 (Miss.1992)). Furthermore, Rule 54(c) of the Mississippi Rules of Civil Procedure provides in part that “every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings.”
¶ 22. In addressing this issue, we first note that Karen included a prayer for general relief in her complaint for modification of alimony. Furthermore, Louis cannot reasonably argue that he was surprised by the chancellor’s ruling based on the alimony provision of the parties’ property settlement agreement; Karen attached a copy of the property settlement agreement to her complaint for modification of alimony. Moreover, Louis cannot assert that he was prejudiced by the judgment, as it affords him the opportunity to return to court with his financial information and to be heard by the chancellor before the adjustments to his alimony obligations are made. Thus, in light of the chancellor’s broad discretionary powers to dispense appropriate relief, we find that the pleadings were sufficient to put the parties on notice that the chancellor would examine the alimony provision of the parties’ property settlement in determining whether to modify alimony. Therefore, this issue is without merit.
III. Where Karen filed a motion for modification as opposed to a motion for contempt, the chancellor erred in going behind the date of filing in awarding relief.
¶ 23. In his motion for clarification, Louis objected to the chancery court’s determination that the alimony increase should take effect three years prior to the filing of the petition for modification. The chancery court entered a judgment on the motion stating that, although a pure modification would be effective from the date of filing of the petition, the increase in this case is a matter of contract, and is therefore effective from the date that the increase would have been due under the terms of the escalation clause. The court further stated that Karen was entitled to go back three years from the date of filing because the statute of limitations for contract matters is three years, pursuant to Mississippi Code Annotated section 15-1-29 (Rev.2003).
¶ 24. Contempt actions for unpaid alimony are subject to a seven-year statute of limitations pursuant to Mississippi Code Annotated section 15-1^3 (Rev.2003). In the case sub judice, Louis was not cited with contempt for failure to meet his alimony obligations. Instead, the court granted relief based on contract principles, finding that Louis failed to perform under the terms of the escalation clause. It is a well-established principle in Mississippi that “[a] true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.” West v. West, 891 So.2d 203, 210(¶ 13) (Miss.2004) (quoting East v. East, 493 So.2d 927, 931-32 (Miss.1986)). Consequently, we find that the chancellor did not err in applying the three-year statute of limitations to this contract issue. This issue is without merit.
IV. The chancellor erred in ruling that the escalation clause was not limited solely to Louis’s military pay, but rather applied to all sources of his income, as this clearly was not the intent of the parties.
*409 ¶ 25. A property settlement agreement creates contractual obligations. Id. (citing In re Estate of Hodges, 807 So.2d 438, 445(¶ 26) (Miss.2002)). Consequently, the provisions of a property settlement agreement must be interpreted according to contract principles. Id. The Mississippi Supreme Court established a three-tiered process for contract interpretation. West, 891 So.2d at 210(¶ 14) (citing Pursue Energy Corp. v. Perkins, 558 So.2d 349, 351 (Miss.1990)).
¶26. We must first consider the “four corners” of the agreement, i.e., examine the actual language used by the parties in the agreement. Id. (citing Perkins, 558 So.2d at 352). If the language of the contract is unambiguous, we are “not concerned with what the parties may have meant or intended ... for the language employed in a contract is the surest guide to what was intended.” Beezley v. Beezley, 917 So.2d 803, 807(¶ 14) (Miss.Ct.App.2006) (quoting Shaw v. Burchfield, 481 So.2d 247, 252 (Miss.1985)). Our next approach, if the language of the contract is not clear, is to “harmonize the provisions in accord with the parties’ apparent intent.” West, 891 So.2d at 210(¶ 14) (quoting Perkins, 558 So.2d at 352). If the intent of the parties continues to be ambiguous, we may utilize the canons of contract construction at our discretion. Id. at 211(¶ 14) (citing Perkins, 558 So.2d at 352-53). Parol or extrinsic evidence may be considered as a last resort. Id. (citing Perkins, 558 So.2d at 353).
¶ 27. Louis argues that the alimony provision of the property settlement agreement is unambiguous because it only references increases in connection with “cost of living expenses” provided through Louis’s military pay. Louis insists that it was the intent of both parties that the escalation clause would apply only to Louis’s military pay. According to Louis, this intent is clear because Karen did not file a motion for contempt or reference the escalation clause in her motion for modification. Louis also asserts that the- agreement must be construed more strongly against Karen because he was not represented by separate counsel at the time of the divorce.
¶ 28. A well-established principle of contract construction is that vague or ambiguous terms are always construed more strongly against the party drafting the agreement. Banks v. Banks, 648 So.2d 1116, 1121 (Miss.1994) (citing Globe Music Corp. v. Johnson, 226 Miss. 329, 334, 84 So.2d 509, 511 (1956)). Thus, if the language of the escalation clause is vague or ambiguous, it must be construed more strongly against Karen.
¶ 29. The chancellor noted in his judgment that the plain language of the agreement does not specify that the alimony to be paid by Louis is limited to a percentage of his military net earnings. Paragraph four of the property settlement agreement states:
The parties agree that the child support obligations and the alimony obligations will increase annually commensurate with any percentage increase in the net earnings (gross earnings minus federal tax, state tax and social security) of the Husband. Alimony increases will exclude pay increases by rank or longevity. That is, the net earnings of the Husband for the year 1981 will be compared with the net earnings of the Husband for the year 1982. If the Husband’s’ net earnings for the year 1982 are more than his net earnings for the year 1981, then by whatever percentage his net earnings have increased, it will become the obligation of the Husband to increase his monthly child support and alimony payments by a similar percentage.
*410 ¶ 30. The escalation clause plainly states that Louis’s alimony obligations will increase annually according to any increases in his net earnings. The provision does not state that the net earnings must be from a specific source. Given the unambiguous language of the escalation clause, it is not necessary to look past the plain language of the provision to discern the parties’ intent. Furthermore, “[escalation clauses in property settlement agreements are enforceable absent fraud, overreaching, or mistake, even though one party may, in the future, find that he or she entered into the agreement imprudently.” West, 891 So.2d at 214(¶ 29) (citing Speed v. Speed, 757 So.2d 221, 227(¶ 18) (Miss.2000)). Thus, we find that the chancellor’s decision is supported by substantial evidence. This issue is without merit.
¶ 31. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, AND GRIFFIS, JJ., CONCUR. SOUTHWICK, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., BARNES, AND ROBERTS, JJ.